UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

   v.

JOHN  J. BRAVATA, RICHARD J.
TRABULSY, ANTONIO BRAVATA, BBC
EQUITIES, LLC and BRAVATA
FINANCIAL GROUP, LLC,

        Defendants,
   and

SHARI A. BRAVATA,

        Relief Defendant.

_____/

CIVIL ACTION No.  2:09-cv-12950

Hon. David M. Lawson
Hon. Magistrate Judge Virginia M. Morgan

**PLAINTIFF U.S. SECURITIES AND EXCHANGE COMMISSION'S
MOTION FOR PROTECTIVE ORDER TO PRECLUDE BRAVATA
DEFENDANTS FROM CALLING PLAINTIFF'S TRIAL COUNSEL AS WITNESS
AT PRELIMINARY INJUNCTION HEARING AND FOR OTHER RELIEF**

The Bravata Defendants seek to call Benjamin Hanauer, an attorney of record for

Plaintiff United States Securities and Exchange Commission, as a witness at the upcoming

preliminary injunction hearing.  Their rationale for doing so is not entirely clear, although their

focus seems to be his involvement with the Commission's pre-lawsuit investigation of this

matter.  For the reasons set forth in the attached brief, this is not a viable justification for calling

counsel of record as a witness.  Moreover, to the extent they rely upon their equitable estoppel

and "unclean hands" affirmative defenses to support calling Mr. Hanauer, such efforts fail,

since such defenses are legally deficient.  Thus, rather than supporting their attempt, the

affirmative defenses should be struck.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


U.S. SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

   v.

JOHN  J. BRAVATA, RICHARD J.          CIVIL ACTION No.  2:09-cv-12950
TRABULSY, ANTONIO BRAVATA, BBC
EQUITIES, LLC and BRAVATA           Hon. David M. Lawson
FINANCIAL GROUP, LLC,            Hon. Magistrate Judge Virginia M. Morgan

           Defendants,

   and

SHARI A. BRAVATA,

           Relief Defendant.
_____/


**PLAINTIFF U.S. SECURITIES AND EXCHANGE COMMISSION'S
BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER
TO PRECLUDE BRAVATA DEFENDANTS FROM CALLING
PLAINTIFF'S TRIAL COUNSEL AS WITNESS AT PRELIMINARY
INJUNCTION HEARING AND FOR OTHER RELIEF**

**ISSUE PRESENTED**

Whether the Court should issue an order barring the Bravata Defendants from calling plaintiff's trial counsel as a witness at the preliminary injunction hearing, and striking their equitable estoppel and "unclean hands" affirmative defenses, when; (a) such testimony would not illicit any relevant evidence; (b) the Bravata Defendants can obtain such evidence from other sources; (c) they are otherwise unable to meet the burden required to call trial counsel as a witness; and (d) when the affirmative defenses upon which they rely as the basis for doing so are legally deficient?

The SEC's answer: "Yes."

# SIGNIFICANT AUTHORITIES CITED

*Picco v. General Electric Co.*, 2003 WL 21918628
(N.D. Ind. Mar. 6, 2003)……………………………………………………………2

*Oil Express National, Inc. v. D'Alessandro*, 1997 WL 282899
(N.D. Ill. May 16, 1997)……………………………………………………………2

*Elmwood Village Center v. Kmart Corp.,* 1994 WL 500945
(E.D. La. Sept. 9, 1994)……………………………………………………….……2

*SEC v. Jasper,* No. 2009 WL 1457755
(N.D. Cal. May 26, 2009)…………………………………………………….....2

*Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F.3d 621
(6th Cir. 2001)………………………………………………………………………3

*Iron Workers Local No.25 Pension Fund v. Watson Wyatt & Co.,*
2006 WL 1156723 (E.D. Mich. May 1, 2006)………………………………...……3

*SEC v. Prof'l Assocs.,* 731 F.2d 349
(6th Cir. 1984)………………………………………………………………………5

*McKeon Products, Inc. v. Cirrus Healthcare Products, LCC,*
2009 WL 1181897 (E.D. Mich. Apr. 30, 2009)………………………………………5

*SEC v. KPMG LLP,* 2003 WL 21976733
(S.D.N.Y. Aug. 20, 2003)……………………………………………………….……5

*SEC v. Rosenfeld,* 1997 WL 400131
(S.D.N.Y. July 16, 1997)………………………………………………………...……5

## RELEVANT FACTS

The Bravata Defendants have named Benjamin Hanauer, counsel for the Commission in this matter, as one of their potential witnesses at the upcoming preliminary injunction hearing. (Ex. 1 hereto, p. 3.) They include the following description of his anticipated testimony:

| | | |
|---|---|---|
| 17 | Benjamin J.<br>Hanauer, Esq. | One of the lawyers representing the Plaintiff during the course |
| 18 | | of the SEC investigation of the Defendants leading up to the<br>filing of the Complaint; has knowledge of the events, discussions<br>and procedures followed between the date the Complaint was |
| 19 | | filed and the issuance of the Court's Emergency Ex-Parte |
| 20 | | Temporary Restraining Order on July 27, 2009; also has<br>information and knowledge derived from the interviews |
| 21 | | conducted by the SEC with a number of BBC investors,<br>including Mr. Roman Kuzma, Aaron D. Simon and others. |
| 22 | | |

(*Id.*)

A week after filing such disclosures, defendants' counsel wrote the Commission reiterating his intention to call Mr. Hanauer as a witness:

Dear Counsel:

As we all approach and prepare for the upcoming evidentiary hearing in this case scheduled for October 1-2, 2009, I have a couple of inquiries, some of which I have already made, but have received no response. Please respond to the following open items:

1.  May we rely on the presence of Ben Hanauer, Esq. at the hearing, as we intend to call him as a witness;

(Ex. 2 hereto.) Thereafter, counsel met-and-conferred about the matter, both in writing (Exs. 3 and 4 hereto) and thereafter by phone, but were unable to resolve the matter themselves.

## ARGUMENT

### A.    BRAVATA DEFENDANTS SHOULD BE BARRED FROM CALLING PLAINTIFF'S TRIAL COUNSEL AS A WITNESS AT THE PRELIMINARY INJUNCTION HEARING.

Federal courts view with a jaundiced eye the practice of seeking the testimony of opposing counsel.  *See Picco v. Gen. Elec. Co.,* No. 1:01-CV-336O, 2003 WL 21918628, at *2 (N.D. Ind. Mar. 6, 2003) (deposition of opposing counsel "provides a unique opportunity for harassment" and is thus viewed with a "jaundiced eye"); *Oil Express Nat'l, Inc. v. D'Alessandro,* No. 96 C 1528, 1997 WL 282899, at *1 (N.D. Ill. May 16, 1997) ("Deposing an opponent's attorney is a drastic measure and is viewed with a jaundice eye and is infrequently proper.").

Such wariness extends to efforts to call opposing counsel as a witness at trial or at an evidentiary hearing.  *See, e.g., Elmwood Village Center v. Kmart Corp.,* No. 94-2840, 1994 WL 500945, at *1 (E.D. La. Sept. 9, 1994) (granting protective order precluding defendant from calling plaintiff's counsel as witness during preliminary injunction hearing).

In SEC enforcement actions, courts routinely bar defendants from calling counsel for the Commission as witnesses.  In *SEC v. Jasper,* for instance, defendant Carl Jasper served the Commission with a 30(b)(6) notice of deposition concerning the Commission staff's pre-lawsuit interviews with two third-party witnesses – one of whom had since died.  No. C07-06122, 2009 WL 1457755 (N.D. Cal. May 26, 2009).  In the course of granting the Commission's motion for a protective order, the court found that the Rule 30(b)(6) notice was "the practical equivalent of an examination of the SEC's attorneys."  *Id.* at *2.  Since Jasper could have deposed the living witness, the court surmised that the defendant's true goal was access to the "recollections of the SEC counsel who are prosecuting this matter – recollections which this court finds are not easily segregated from those attorney's thoughts, mental

impressions, opinions or conclusion about this case." *Id.* at *3. Even though one of the

witnesses was dead, the court remained "unpersuaded that the stated need for the SEC's

deposition outweighs the SEC's interest in protecting its attorneys' work product." *Id.*

Myriad other federal courts have rejected similar efforts to elicit the testimony of the

Commission's trial counsel.[1]

Before calling Mr. Hanauer to testify, the Bravata Defendants must establish that no

other means exist to obtain the information elicited from such testimony, that the information

sought is relevant and not privileged, and that the information is crucial to the preliminary

injunction hearing. *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F.3d 621, 628 (6th Cir.

2001) (affirming denial of attempts to depose arbitration panel); *Iron Workers Local No.25*

*Pension Fund v. Watson Wyatt & Co.,* No. 04-40243, 2006 WL 1156723 (E.D. Mich. May 1,

2006) (affirming magistrate judge's denial of motion to compel deposition of counsel).

---

[1] *See SEC v. SBM Investment Certificates, Inc.,* No. DKC 2006-0866, 2007 WL 609888 (D. Md. Feb. 23, 2007) (quashing 30(b)(6) subpoena because such testimony invariably elicited the investigating attorneys' thought processes and opinions, regardless of whether counsel of record served as the 30(b)(6) designee); *SEC v. Buntrock,* No. 02 C 2180, 2004 WL 1470278 (N.D. Ill. June 29, 2004) (quashing 30(b)(6) subpoena concerning the Commission's investigation, as "This Court has no doubt that Buntrock is not entitled to the type of discovery he seeks in his 30(b)(6) notice of deposition and that the deposition notice impermissibly seeks to invade the SEC's attorney work product"); *SEC v. Rosenfeld,* 97 C 1467, 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997) ("Rosenfeld seeks to explore the extent of the SEC's knowledge (how much it knows and how much it does not know) as a result of the investigative efforts of its attorneys. This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason."). *Accord FTC v. U.S. Grant Resources, LLC,* No. Civ. A 04-596, 2004 WL 1444951, at *10 (E.D. La. June 25, 2004) ("Throughout the defendants' memorandum in opposition, the argument is that they are entitled to discovery of the facts relevant to their defense to various consumer declarations and to the FTC's claims. However, a close reading reveals that defendants seek to discover the FTC's theories as to the underlying facts, the extent of the FTC's knowledge (how much it knows and how much it does not know) as a result of the investigative efforts of its attorneys, counsel's impressions regarding the significance of the facts, the nature of the FTC's work product, the FTC's legal position and how it arrived at that position. The defendants are not entitled to that type of discovery").

The Bravata Defendants fail to meet a single one of these elements, much less all of them. They claim to need his testimony because, they allege, he has represented the Commission "during the course of the SEC investigation of the Defendants leading up to the filing of the Complaint; has knowledge of the events, discussions and procedures followed between the date the Complaint was filed and the issuance of the Court's Emergency Ex-Parte Temporary Restraining Order on July 27, 2009; also has information and knowledge derived from the interviews conducted by the SEC with a number of BBC investors, including Mr. Roman Kuzma, Aaron D. Simon and others."

Far from being "crucial," how the Commission ran its investigation is wholly irrelevant to the preliminary injunction hearing – and to this litigation generally. Rather, the preliminary injunction hearing is about whether defendants violated the federal securities laws and whether future violations by the Bravata Defendants are likely. *See SEC v. Prof'l Assocs.*, 731 F.2d 349, 353 (6th Cir. 1984). At the risk of stating the obvious, how the Commission conducted its investigation will not shed any light on whether the Bravata Defendants are likely to violate the law going forward. Even if Mr. Hanauer's interviews with investors were somehow relevant – and, again at the risk of stating the obvious – the Bravata Defendants could learn about the interviews directly from the investors, many of whom are already scheduled to testify.

Defendants may argue that such testimony is somehow relevant to their equitable estoppel and "unclean hands" affirmative defenses. For the reasons set forth below, rather than forming the basis for calling Mr. Hanauer, those affirmative defenses are fatally flawed and should be stricken.

**B.     THE BRAVATA DEFENDANTS' "UNCLEAN HANDS" AND EQUITABLE ESTOPPEL AFFIRMATIVE DEFENSES, UPON WHICH THEY RELY TO CALL PLAINTIFF'S TRIAL COUNSEL AS A WITNESS, ARE LEGALLY IMPROPER AND SHOULD BE STRUCK.**

An equitable estoppel affirmative defense will be stricken if, on the face of the pleading, it is not viable. *See McKeon Products, Inc. v. Cirrus Healthcare Products, LCC,* No. 08-13266, 2009 WL 1181897, at *1-2 (E.D. Mich. Apr. 30, 2009) (granting motion to strike equitable estoppel affirmative defense as defendant "has not provided facts that would entitle it to relief even if equitable estoppel were cognizable as a cause of action").

Courts are wary of equitable estoppel and "unclean hands" affirmative defenses against a government agency, particularly when the agency is merely attempting to enforce its congressional mandate in the public interest. *SEC v. KPMG LLP,* No. 03 Civ. 671, 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003). Thus, courts uniformly require such an affirmative defense to include factual allegations that the agency's misconduct was egregious and that the resulting prejudice rose to a constitutional level. *Id.* Further, the allegations must establish a causal nexus between the alleged misconduct and the deprivation of a constitutional right. *SEC v. Rosenfeld,* No. 97 C 1467, 1997 WL 400131, at *2 (S.D.N.Y. July 16, 1997).

Given this high hurdle, courts routinely strike equitable estoppel or "unclean hands" affirmative defenses asserted against the Commission. *KPMG,* 2003 WL 21976733, at *3 (striking affirmative defense predicated upon alleged pre-lawsuit conversation KPMG had with SEC, as "the SEC was acting to further its congressional mandate to investigate potential violations of the securities laws, and defendants do not – and could not – contend that the

SEC's failure specifically to identify a violation of GAAP constituted egregious misconduct or prejudice that rose to a 'constitutional level'").[2]

The Bravata Defendants' defenses deserve the same fate. (Docket No. 52, pp. 28-31.) The first such affirmative defense alleges that it was this lawsuit, not defendants' actions, that caused the business to fail. They further allege that this lawsuit is a byproduct of the Commission's failure to appreciate the "J Curve" phenomenon – graphically depicted in the Bravata Defendants' affirmative defenses. (*Id.*, ¶¶ 7-9.)

---

[2]  *See also SEC v. Follick,* 00 Civ. 4385, 2002 WL 31833868, at *7 (S.D.N.Y. Dec. 18, 2002) (striking affirmative defense as "Nothing the SEC or any other Government actor is alleged to have done will prevent him from putting forth his defenses to this suit."); *SEC v. Thorn,* No. 2:01-CV-290, 2002 WL 31412440, at *2-3 (S.D. Ohio Sept. 30, 2002) (striking "unclean hands" affirmative defense that the SEC was the "sole reason" for the investors' loss of control over their funds); *SEC v. Rivlin,* No. 99-1455, 1999 WL 1455758 (D.D.C. Dec. 20, 1999) (striking equitable estoppel and "unclean hands" affirmative defenses predicated upon allegations that SEC counsel failed to sufficiently communicate with defendant during, or permit him to participate in, the SEC investigation); *SEC v. McCaskey,* 56 F. Supp. 2d 323, 326-27 (S.D.N.Y. 1999) (striking affirmative defense, as "the defendants have offered nothing to suggest they detrimentally relied on any misrepresentation by the SEC, let alone that such reliance resulted in prejudice to their case of a constitutional magnitude."); *SEC v. Rosenfeld,* 1997 WL 400131, at *1 ("Without more concrete and specific allegations in the Amended Answer of how defendant's ability to defend himself or defendant's access to witnesses or evidence which would aid in his defense have been compromised by the SEC's actions, defendant will not be permitted to use the affirmative defense to engage in a 'fishing expedition' to discover any potential prejudice.") (citation omitted); *SEC v. Lorin,* No. 90 Civ. 7461, 1991 WL 576895 (S.D.N.Y. June 18, 1991) ( "The SEC's alleged conduct neither violates a constitutional right nor constitutes egregious misconduct. In view of the strong public policy against dismissing securities enforcement actions prosecuted for the public good, and in view of the fact that the misconduct, if any, did not amount to a violation of constitutional rights or similarly egregious conduct, the defense of unclean hands is not available as a matter of law.") (citation omitted); *SEC v. Elec. Warehouse, Inc.,* 689 F. Supp. 53, 70-73 (D. Conn. 1988) (striking "unclean hands" affirmative defense as "There is no nexus between the alleged misconduct and the Commission's allegations against [defendant] and the Commission's allegations against [defendant] or the evidence it seeks to introduce against him").

Based upon the foregoing precedent, this affirmative defense is legally deficient.  The Commission's alleged ignorance does not rise to a "constitutional level," it does not constitute egregious conduct, and it has not deprived defendants of the ability to defend themselves.

The Bravata Defendants' also allege that beginning in 2005 or so, the Commission had a budget shortfall attributed to certain facility costs.  (*Id.*, ¶¶ 10-12.)  They allege that such internal controls deficiencies has rendered the Commission's hands "unclean," thus precluding it from seeking equitable relief.

Again, this affirmative defense fails to satisfy the requirements set forth above.  Such factual allegations are not the stuff of egregious conduct, they do not constitute prejudice rising to a constitutional level, and they do not thwart defendants' ability to defend themselves.[3]

It is conceivable that the Bravata Defendants will include as an additional defense allegations that the Commission's counsel were unnecessarily brusque with some individuals interviewed during the investigation; that its investigation was inadequate because it failed to capture exculpatory evidence; that it failed to bring exculpatory evidence to the Court's attention at the inception of this case; and that its motion for a TRO failed to comply with Rule 65 of the Federal Rules of Civil Procedure.  None of the allegations constitute egregious conduct or the deprivation of constitutional rights, nor has the alleged conduct prevented defendants from defending themselves.  Moreover, even if one assumes the accuracy of these allegations for present purposes, they have nothing to do with the likelihood of defendants' future violations.  Thus, they do not justify defendants' efforts to call Mr. Hanauer as a witness.

---

[3] Taking the Bravata Defendants' theory to its logical extension, the Commission may not seek equitable relief in *any* enforcement action because of the unclean hands it sustained from the 2005 facilities cost issue.

Because these affirmative defenses are legally deficient, they cannot support the

Bravata Defendants' efforts to call Mr. Hanauer as a witness in this matter. Further, they

should be struck.

## CONCLUSION

For these reasons, the motion should be granted, a protective order should be issued

barring the Bravata Defendants from calling plaintiff's trial counsel as a witness at the

preliminary injunction hearing, and this Court should issue an order striking the Bravata

Defendants' "unclean hands" and equitable estoppel affirmative defenses.

Dated: September 15, 2009

Respectfully submitted,

**UNITED STATES SECURITIES AND
EXCHANGE COMMISSION**

By: /s/ Jonathan S. Polish_____
One of its attorneys

Benjamin J. Hanauer
James G. Lundy
Jonathan S. Polish
Attorneys for Plaintiff
Securities and Exchange Commission
175 West Jackson, Suite 900
Chicago, IL 60604
Telephone:  (312) 353-8642 (Hanauer)
Telephone:  (312) 353-6884 (Polish)
E-mail:  HanauerB@sec.gov
E-mail:  PolishJ@sec.gov

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


U.S. SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

    v.

JOHN  J. BRAVATA, RICHARD J.        CIVIL ACTION No.  2:09-cv-12950
TRABULSY, ANTONIO BRAVATA, BBC
EQUITIES, LLC and BRAVATA        Hon. David M. Lawson
FINANCIAL GROUP, LLC,        Hon. Magistrate Judge Virginia M. Morgan

        Defendants,

    and

SHARI A. BRAVATA,

        Relief Defendant.
_____/

## JOINT RULE 26(f) SCHEDULING CONFERENCE REPORT

By Order dated August 4, 2009 (Doc. No. 34), the Court required the parties to meet

and confer regarding the scheduling of those matters addressed in Fed. R. Civ. Proc. 26(f), for

purposes of scheduling and discovery in anticipation of the Court conducting an evidentiary

hearing on Plaintiff's request for a preliminary injunction, appointment of a receiver and

continuation of the asset freeze, all of which were entered by the Court on July 27, 2009 (Doc.

No. 22) and continued in the form of the Court's August 4, 2009 Order.

Defendants, appearing by and through their respective counsel, have conferred with

respect to the details of this Scheduling Conference Report ("Report") and exchanged their

positions with the Plaintiff with respect to the following matters.  Accordingly, this Report is

hereby submitted as a proposed Joint Rule 26(f) Scheduling Conference Report for the limited

purpose of scheduling and preparation for the evidentiary hearing.  With regard to such a

hearing, the parties are in agreement on the following proposal:

1.     <u>Response to Defendants' Filings</u>.  On August 11, 2009, the Defendants filed

three briefs requesting, *inter alia*, certain carve-outs of the asset freeze previously ordered by

the Court.  (See Docket Nos. 40-42).  Further, the Bravata Defendants' filing (Docket No. 42),

additionally challenges the validity of the Temporary Restraining Order entered by the Court

on July 27, 2009.  The parties propose that the Commission be allowed to respond to these

filings within 14 days, by August 25, 2009.

2.     <u>Rule 26(a)(1) Initial Disclosures</u>.   The parties propose that they shall exchange

Rule 26(a)(1) initial disclosures and documents, but limited to information and documents that

the parties may use to support their claims and defenses at a preliminary injunction hearing, no

later than 14 days after the filing of this Report.  Those documents included in the Defendants'

initial disclosures will be delivered or produced to the Plaintiff and all other Defendants, within

that same time period.

3.     <u>Depositions and Written Discovery</u>.  The Plaintiff and Defendants are in

disagreement as to whether further discovery should take place in advance of the evidentiary

hearing.  The parties' respective positions are presented below:

<u>Position of Plaintiff Commission in Support of Discovery</u>:  The Commission

renews its motion for expedited discovery in advance of any evidentiary hearing, (<u>See</u> Docket

No. 4), and proposes that such discovery commence immediately upon the exchange of the

parties' Rule 21(a)(1) disclosures.  Defendants' proposed witness list identifies, and their recent

filings contain affidavits of, witnesses who the Commission would need the opportunity to

depose and request documents from in advance of any evidentiary hearing.  Further, at the outset of this matter, the Commission was hopeful that the parties would be able to narrow the disputed issues, such that any hearing – to the extent one was needed – would relate to a few discrete areas.  That has proven not to be the case.  Rather, in their submission (Docket No. 42), the Bravata Defendants broadly challenge the Commission's entitlement to a preliminary injunction.  While the Commission is certainly prepared to do so, such an evidentiary showing requires a broad range of expedited discovery, including depositions.  Moreover, Defendants' filings reference documents which have not been produced to the Commission.  Especially in light of Defendants' recent filings, expedited discovery, which is authorized by Federal Rules of Civil Procedure 30(a), 33(b), and 34(b), is warranted.

Position of Defendants in Opposition to Discovery.  All of the Defendants in this case oppose conducting depositions prior to the evidentiary hearing, due principally because the cost of conducting depositions on an expedited basis, at a time when the Court has not yet ruled on any pending motions requesting approval for the Defendants to access funds or other assets in order to retain counsel for their defense, remains pending. In short, counsel is hesitant to incur out-of-pocket deposition expenses until the Defendants are in a position to keep pace with legal fees and costs of the litigation.

Secondarily, counsel anticipate that document discovery and preparation for an evidentiary hearing on an expedited basis will require substantial time and effort and scheduling, attending and preparing for depositions in parallel will add complications to scheduling. Lastly, most if not all witnesses listed for all parties in this case reside in or near the Detroit metropolitan area and will be subject to not only compelling their attendance at a

hearing, but should be readily available for counsel for any party to discuss their anticipated testimony prior to the hearing.

    4.    <u>Disclosure of Proposed Witnesses for Evidentiary Hearing</u>.  As of the filing of this Report, the following are the names of witnesses that the parties may call as such at an evidentiary hearing along with an estimate of the amount of time needed for presentation of each witness' direct testimony.  The parties reserve the right to supplement the following names of witnesses based upon the initial disclosures made by the parties and any discovery conducted in advance of the evidentiary hearing.

## PLAINTIFF'S LIST OF WITNESSES

| Witness Name | Anticipated Topic(s) of Testimony | Anticipated Length of Direct Examination |
|---|---|---|
| John J. Bravata | Representations made to investors; uses of investor funds; authentication of documents; finances of entity defendants; entity defendants' sales and compensation practices; compliance with injunction and asset freeze. | 60-90 minutes |
| Richard J. Trabulsy | Representations made to investors; uses of investor funds; authentication of documents; finances of entity defendants; entity defendants' sales and compensation practices; compliance with injunction and asset freeze. | 60-90 minutes |
| Antonio M. Bravata | Representations made to investors; uses of investor funds; authentication of documents; finances of entity defendants; entity defendants' sales and compensation practices; compliance with injunction and asset freeze. | 60-90 minutes |
| Shari A. Bravata | Uses of investor funds; compliance with injunction and asset freeze; other matters set forth in her declaration. | 20 minutes |

| Witness Name | Anticipated Topic(s) of Testimony | Anticipated Length of Direct Examination |
|---|---|---|
| Luz M. Aguilar | Defendants' sources and uses of funds; authentication of documents. | 45-60 minutes |
| Theresa Makowski | Representations made to investors; entity defendants' sales and compensation practices. | 30-45 minutes |
| Tracy J. Ostrander | Representations made to investors; entity defendants' sales and compensation practices. | 30-45 minutes |
| Aaron D. Simon | Representations made to investors; entity defendants' sales and compensation practices. | 30-45 minutes |
| Robert J. DeFauw | Representations made to investors. | 30-45 minutes |
| Diana Frye | Representations made to investors; defendants' sales practices; authentication of audio recordings. | 30-45 minutes |
| Kenneth Kruger | Representations made to investors. | 30-45 minutes |
| Patricia Philliben | Representations made to investors. | 30-45 minutes |
| Kendra Sparks | Representations made to investors. | 30-45 minutes |
| Joan Weiss | Representations made to investors. | 30-45 minutes |
| FRE 702 Witness (TBD) | Valuation of BBC Equities' real estate portfolio and other assets; accuracy of representations to investors when such representations were being made. | 45-60 minutes |

## DEFENDANTS' LIST OF WITNESSES

| Witness Name | Anticipated Topic(s) of Testimony | Anticipated Length of Direct Examination |
|---|---|---|
| Melissa Traver | CFO for Bravata Financial Group, LLC. | 30 minutes |

| | | |
|---|---|---|
| | She will testify concerning the duties she had at BBC and BFG; the manner that the financial books and records were kept during the relevant time period and that no one from the SEC ever spoke to her prior to the present action being filed. | |
| Bruce Coleman | Compliance Officer for Bravata Financial Group, LLC. Hired in March 2009, Mr. Coleman was only just beginning to handle compliance matters for BFG, which included the recent approval of the firm by the SEC of its application to become a registered investment advisor, which was approved; policies and procedures in the firm on the offering process and related matters. | 30 minutes |
| John Sellers, Esq. | Former General Counsel for Bravata Financial Group, LLC and BBC Equities, LLC. Mr. Sellers formerly was a partner in the law firm retained by BBC and BFG for legal services related to the drafting of all offering materials for BBC, including the February 7, 2007 "PPM" and subscription documents associated therewith. Mr. Sellers left his firm to come in house in that same capacity with BBC and BFG and functioned as their in house securities counsel until June 2009. | 60 minutes |
| Roman Kuzma | Business associate of John J. Bravata and co-investor in two real estate projects pre-dating BBC Equities, LLC. He will testify to the facts set forth in his Sworn Statement filed with Defendants' papers on August 11, 2009 and will dispute several of the factual inaccuracies contained in the SEC's Complaint regarding his participation in BBC and the time frame of his investments. | 30 minutes |
| Dylite Adams | investor in BBC Equities, LLC and grandmother of Antonio M. Bravata. Ms. Adams will testify essentially to the facts stated in her Affidavit on file in this case, plus the hardships she has recently sustained | 30 minutes |

| | as a result of her bank account being frozen in the Court's asset freeze. | |
|---|---|---|
| Lily Trabulsy | Investor in BBC Equities, LLC and grandmother of Richard J. Trabulsy. If necessary, Ms. Trabulsy will testify as to her willingness to extend as collateral an interest in her home as stated in her Affidavit attached to Richard Trabulsy's Petition for Limited Release of Frozen Assets Allowing Him to Borrow Money Against His Life Insurance Policy to Pay Legal Expenses (Docket No. 41). Ms. Trabulsy may also testify regarding her frozen bank account. | 20 minutes |

5.      Appointment of a Receiver.      Defendants maintain that the filing of the

Plaintiff's civil enforcement action has irreparably impacted BBC Equities, LLC and Bravata

Financial Group, LLC as going concerns.  In light of the already pending civil litigation

brought against some of the Defendants primarily by lenders and vendors, Defendants are

prepared to consent to the appointment of a receiver if: (i) the receivership covers only the two

corporate Defendants and not the individual Defendants; (ii) the scope of the receivership and

duties of the receiver are satisfactory to the Defendants; and (iii) the text of the order

appointing a receiver is acceptable in form and substance to counsel for the Defendants.

Concerning (i), Plaintiff agrees with Defendants' proposal to limit the scope of the receivership

to the two corporate Defendants.  Plaintiff disagrees to the remaining two conditions asserted

by Defendants – (ii) and (iii) – and renews its request for a receivership substantially in the

form set forth in the proposed receivership order previously provided to the Court.

Dated this 12th day of August, 2009.

Respectfully submitted,

/s/ Benjamin J. Hanauer
Benjamin J. Hanauer
James G. Lundy
Jonathan S. Polish
Attorneys for Plaintiff
Securities and Exchange SEC
175 West Jackson, Suite 900
Chicago, IL 60604
Telephone:  (312) 353-8642 (Hanauer)
Telephone:  (312) 353-0878 (Lundy)
Telephone:  (312) 353-6884 (Polish)
E-mail:  HanauerB@sec.gov
E-mail:  LundyJ@sec.gov
E-mail:  PolishJ@sec.gov

| | |
|---|---|
| s/ with consent of Michael J. Riordan | /s/  with consent of George B. Donnini |
| MICHAEL J. RIORDAN | George B. Donnini |
| Assistant United States Attorney | Attorney for BBC Equities, LLC and Bravata |
| 211 West Fort Street, Suite 2001 | Financial Group, LLC |
| Detroit, MI 48226 | Butzel Long, a professional corporation |
| Telephone: (313) 226-9602 | 150 West Jefferson Ave. |
| Facsimile: (313) 226-3800 | Detroit, MI 48226 |
| Email:  Michael.riordan@usdoj.gov | Telephone: (313) 225-7000 |
| | E-mail: donnini@butzel.com |

| | |
|---|---|
| /s/ with consent of Gregory Bartko, Esq. | /s/ with consent of Gary Saretsky, Esq. |
| Law Office of Gregory Bartko, LLC | /s/ with consent of Jonathan M. Sterling, Esq. |
| Michigan Bar No. P30052 | SARETSKY HART MICHAELS & GOULD PC |
| Counsel for Bravata Defendants | 995 S. Eton |
| 3475 Lenox Road, Suite 400 | Birmingham, MI 48009 |
| Atlanta, GA 30326 | Counsel for Richard J. Trabulsy |
| Telephone: (404) 238-0550 | 248.502.3300 (phone) |
| Facsimile: (866) 342-4092 | 248.502.3301 (fax) |
| gbartko@securitieslawcounsel.com | JSterling@saretsky.com |

## <u>CERTIFICATE OF SERVICE</u>

Benjamin J. Hanauer, an attorney, hereby certifies that on August 12, 2009, he caused the foregoing submission to be filed with the Clerk of Court using the CM/ECF system

<u>s/ Benjamin J. Hanauer</u>

# EXHIBIT 2

LAW OFFICE OF

*Gregory Bartko, Esq.*

ATTORNEY AT LAW

*A Limited Liability Company*

VIA EMAIL AND
FIRST CLASS MAIL

September 2, 2009

SECURITIES AND
EXCHANGE COMMISSION
Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, Div. of Enforcement
175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604

> Re: United States Securities and Exchange Commission
> Vs. John J. Bravata, et al.; United States District Court—Eastern
> District of Michigan; File No.: 2:09-cv-12950-DML

Dear Counsel:

As we all approach and prepare for the upcoming evidentiary hearing in this case scheduled for October 1-2, 2009, I have a couple of inquiries, some of which I have already made, but have received no response. Please respond to the following open items:

1. May we rely on the presence of Ben Hanauer, Esq. at the hearing, as we intend to call him as a witness;

2. I am still awaiting receipt of a current *curriculum vitae* for Luz Aguilar; and

3. I was expecting the Commission to identify what documents described in our Rule 26(a)(1) disclosures that it does NOT have possession of so we can scan same and forward them to you as quickly as possible.

Thank you for your continuing courtesies.

Sincerely,

Gregory Bartko, Esq.
Law Office of Gregory Bartko, LLC
Cc: George B. Donnini, Esq. (via email)
    Gary Saretsky, Esq. (via email)

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

# EXHIBIT 3



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
175 WEST JACKSON BOULEVARD, SUITE 900
CHICAGO, ILLINOIS 60604

Jonathan S. Polish                                                    (312) 353-6884
Senior Trial Counsel                                              PolishJ@sec.gov
Division of Enforcement

September 2, 2009

VIA EMAIL (gbartko@securitieslawcounsel.com)

Gregory Bartko
Law Office of Gregory Bartko, LLC
3475 Lenox Road, Suite 400
Atlanta , GA  30326

    Re:    *Securities and Exchange Commission v. John Bravata, et al.*, 2:09-cv-12950

Dear Greg:

    I am writing both in response to your letter from earlier this morning and to meet-and-confer with you on the matters enumerated below.  For the reasons set forth below, the Bravata Defendants' equitable estoppel and "unclean hands" affirmative defense are improper, as is their request to call Ben Hanauer as a witness at the upcoming preliminary injunction hearing.

**THE BRAVATA DEFENDANTS' EQUITABLE ESTOPPEL AND**
**"UNCLEAN HANDS" AFFIRMATIVE DEFENSES ARE IMPROPER**

    An equitable estoppel affirmative defense will be stricken if, on the face of the pleading, it is not viable.  *See McKeon Products, Inc. v. Cirrus Healthcare Products, LCC,* No. 08-13266, 2009 WL 1181897, at *1-2 (E.D. Mich. Apr. 30, 2009) (granting motion to strike equitable estoppel affirmative defense as defendant "has not provided facts that would entitle it to relief even if equitable estoppel were cognizable as a cause of action").

    Based upon this standard, if the Bravata Defendant refused to withdraw their affirmative defense, it should be stricken.  As a general matter, equitable estoppel and "unclean hands" may not be invoked

Gregory Bartko
September 2, 2009
Page 2

against a government agency that is attempting to enforce its congressional mandate in the public interest. *SEC v. KPMG LLP,* No. 03 Civ. 671, 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003). An affirmative defense may only be pled against a government agency if it includes factual allegations that the agency's misconduct was egregious and the resulting prejudice rose to a constitutional level. *Id.* Further, the allegations must establish a causal nexus between the alleged misconduct and the deprivation of a constitutional right. *SEC v. Rosenfeld,* No. 97 C 1467, 1997 WL 400131, at *2 (S.D.N.Y. July 16, 1997).

　　　　Given this high hurdle, courts routinely strike equitable estoppel or "unclean hands" affirmative defenses asserted against the Commission. *KPMG,* 2003 WL 21976733, at *3 (striking affirmative defense predicated upon alleged pre-lawsuit conversation KPMG had with SEC, as "the SEC was acting to further its congressional mandate to investigate potential violations of the securities laws, and defendants do not – and could not – contend that the SEC's failure specifically to identify a violation of GAAP constituted egregious misconduct or prejudice that rose to a 'constitutional level'"); *SEC v. Follick,* 00 Civ. 4385, 2002 WL 31833868, at *7 (S.D.N.Y. Dec. 18, 2002) (striking affirmative defense based upon alleged threats and intimidation by SEC counsel, as defendant "has not demonstrated that any of the improper actions he alleges are prejudicing him in his defense of this action. Nothing the SEC or any other Government actor is alleged to have done will prevent him from putting forth his defenses to this suit."); *SEC v. Thorn,* No. 2:01-CV-290, 2002 WL 31412440, at *2-3 (S.D. Ohio Sept. 30, 2002) (striking "unclean hands" affirmative defense that the SEC was the "sole reason" for the investors' loss of control over their funds); *SEC v. Rivlin,* No. 99-1455, 1999 WL 1455758 (D.D.C. Dec. 20, 1999) (striking equitable estoppel and "unclean hands" affirmative defenses predicated upon allegations that SEC counsel failed to sufficiently communicate with defendant during, or permit him to participate in, the SEC investigation); *SEC v. McCaskey,* 56 F. Supp. 2d 323, 326-27 (S.D.N.Y. 1999) ("Here, the defendants have offered nothing to suggest they detrimentally relied on any misrepresentation by the SEC, let alone that such reliance resulted in prejudice to their case of a constitutional magnitude. Thus, the defense has no basis in fact. Likewise, there is no question of law which might allow defendants' estoppel defense to succeed. Moreover, allowing the defense to remain would prejudice the SEC by needlessly lengthening and complicating the discovery process and trial of this matter. Therefore, defendants' equitable estoppel defense is stricken."); *SEC v. Rosenfeld,* No. 97 C 1467, 1997 WL 400131, at *1 (S.D.N.Y. July 16, 1997) ("Defendant's allegation that the SEC's alleged misconduct constituted a criminal breach of Ontario securities laws satisfies the pleading requirement that it be egregious. Defendant's assertion in his Amended Answer that the alleged misconduct was severely prejudicial to him, a claim clarified in his responsive papers on this motion, does not state particulars about how he has been prejudiced, and the prejudice alleged is 'entirely non-specific and conclusory'. There is no allegation that Pruitt or anyone else spread confidential or privileged information which did in fact prejudice the defense of this matter. Prior to initiating a proceeding against a defendant, the SEC is entitled to make inquiries concerning the facts it is investigating. Without more concrete and specific allegations in the Amended Answer of how defendant's ability to defend himself or defendant's access to witnesses or evidence which would aid in his defense have been compromised by the SEC's actions, defendant will not be permitted to use the affirmative defense to engage in a 'fishing expedition' to discover any potential prejudice.") (citation omitted); *SEC v. Lorin,* No. 90 Civ. 7461, 1991 WL 576895 (S.D.N.Y. June 18, 1991) (striking "unclean hands" affirmative defense predicated on allegation that the SEC, in violation of a court order, received deposition transcript from another case, as "The SEC's alleged conduct neither violates a constitutional right nor constitutes egregious misconduct. In view of the strong

Gregory Bartko
September 2, 2009
Page 3

public policy against dismissing securities enforcement actions prosecuted for the public good, and in view of the fact that the misconduct, if any, did not amount to a violation of constitutional rights or similarly egregious conduct, the defense of unclean hands is not available as a matter of law.") (citation omitted); *SEC v. Electronics Warehouse, Inc.,* 689 F. Supp. 53, 70-73 (D. Conn. 1988) (striking "unclean hands" affirmative defense predicated upon "troubling" allegations that "if true, may raise a serous question of the conduct of one or more of the Commission's employees," since "There is no nexus between the alleged misconduct and the Commission's allegations against [defendant] and the Commission's allegations against [defendant] or the evidence it seeks to introduce against him").

Here, the Bravata Defendants' "unclean hands" and collateral estoppel affirmative defenses are predicated upon their allegations that the Commission's lawsuit reflects a "complete lack of understanding or appreciat[ion] for the customary growth curve of a start up blind pool real estate fund," that the Commission itself has failed to properly keep and maintain its own financial books and records, and other unspecified misconduct by the Commission, both with respect to this matter and generally.  None of these factual allegations satisfy the aforementioned legal standards.  Accordingly, such affirmative defenses are improper, and we ask that you withdraw them.

THE BRAVATA DEFENDANTS' REQUEST TO CALL SEC COUNSEL
AS A WITNESS AT THE PRELIMINARY INJUNCTION HEARING IS IMPROPER

Federal courts view with a jaundiced eye the practice of seeking the testimony of opposing counsel.  *See Picco v. General Electric Co.,* No. 1:01-CV-336O, 2003 WL 21918628, at *2 (N.D. Ind. Mar. 6, 2003) (deposition of opposing counsel "provides a unique opportunity for harassment," and is thus viewed with a "jaundiced eye"); *Oil Express National, Inc. v. D'Alessandro,* No. 96 C 1528, 1997 WL 282899, at *1 (N.D. Ill. May 16, 1997) ("Deposing an opponent's attorney is a drastic measure and is viewed with a jaundice eye and is infrequently proper.").

The federal judiciary's skepticism concerning this tactic extends to Commission enforcement actions.  In *SEC v. Jasper,* for instance, defendant Carl Jasper served the Commission with a 30(b)(6) notice of deposition concerning the Commission staff's pre-lawsuit interviews with two third-party witnesses – one of whom had since died.  No. C07-06122, 2009 WL 1457755 (N.D. Cal. May 26, 2009).  In the course of granting the Commission's motion for a protective order, the court found that the Rule 30(b)(6) notice was "the practical equivalent of an examination of the SEC's attorneys." *Id.* at *2.  Since Jasper could have chosen to depose the living witness for the information, the court surmised that the defendant's true goal was access to the "recollections of the SEC counsel who are prosecuting this matter – recollections which this court finds are not easily segregated from those attorney's thoughts, mental impressions, opinions or conclusion about this case." *Id.* at *3.  Notwithstanding the fact that one of the witnesses was dead, the court was "unpersuaded that the stated need for the SEC's deposition outweighs the SEC's interest in protecting its attorneys' work product." *Id.*

Along the same lines, in *SEC v. SBM Investment Certificates, Inc.,* No. DKC 2006-0866, 2007 WL 609888 (D. Md. Feb. 23, 2007), the court quashed a Rule 30(b)(6) notice issued by defendant Eric Westbury to the Commission regarding its pre-lawsuit investigation, holding that such testimony invariably

Gregory Bartko
September 2, 2009
Page 4

elicited the investigating attorneys' thought processes and opinions. *Id.* at *26. Westbury proposed that the Commission could avoid such problems by designating Andrea Dittert, the SEC's supervisory staff accountant staffed on the case, as its 30(b)(6) witness. *Id.* at *24. The Court summarily rejected that suggestion, holding that even a non-attorney designee "would have to be fully and completely prepared by the investigating attorneys to discuss the noticed topics, including the attorney's opinion work product, and in addition, an SEC examiner like Ms. Dittert works under the supervision of the SEC's investigating attorneys, and may already be familiar with such opinion work product." *Id.*

Myriad other federal courts have rejected similar efforts to elicit the testimony of the Commission's trial counsel. *See, e.g., SEC v. Buntrock,* No. 02 C 2180, 2004 WL 1470278 (N.D. Ill. June 29, 2004) (quashing 30(b)(6) subpoena concerning the Commission's investigation of Waste Management, as "This Court has no doubt that Buntrock is not entitled to the type of discovery he seeks in his 30(b)(6) notice of deposition and that the deposition notice impermissibly seeks to invade the SEC's attorney work product"); *SEC v. Rosenfeld,* 97 C 1467, 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997) ("Rosenfeld seeks to explore the extent of the SEC's knowledge (how much it knows and how much it does not know) as a result of the investigative efforts of its attorneys. This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason."). *Accord FTC v. U.S. Grant Resources, LLC,* No. Civ. A 04-596, 2004 WL 1444951, at *10 (E.D. La. June 25, 2004) ("Throughout the defendants' memorandum in opposition, the argument is that they are entitled to discovery of the facts relevant to their defense to various consumer declarations and to the FTC's claims. However, a close reading reveals that defendants seek to discover the FTC's theories as to the underlying facts, the extent of the FTC's knowledge (how much it knows and how much it does not know) as a result of the investigative efforts of its attorneys, counsel's impressions regarding the significance of the facts, the nature of the FTC's work product, the FTC's legal position and how it arrived at that position. The defendants are not entitled to that type of discovery").

Before calling Mr. Hanauer to testify, the Bravata Defendants must establish that no other means exist to obtain the information elicited from such testimony, that the information sought is relevant and not privileged, and that the information is crucial to the preliminary injunction hearing. *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F.3d 621, 628 (6th Cir. 2001) (affirming denial of attempts to depose arbitration panel); *Iron Workers Local No.25 Pension Fund v. Watson Wyatt & Co.,* No. 04-40243, 2006 WL 1156723 (E.D. Mich. May 1, 2006) (affirming magistrate judge's denial of motion to compel deposition of counsel). They will be unable to make this showing. They claim to need his testimony because, they allege, he has represented the Commission "during the course of the SEC investigation of the Defendants leading up to the filing of the Complaint; has knowledge of the events, discussions and procedures followed between the date the Complaint was filed and the issuance of the Court's Emergency Ex-Parte Temporary Restraining Order on July 27, 2009; also has information and knowledge derived from the interviews conducted by the SEC with a number of BBC investors, including Mr. Roman Kuzma, Aaron D. Simon and others." This fails each and every element set forth above. Bravata Defendants could elicit testimony from the aforementioned individuals to learn about conversations they had with Mr. Hanauer. Moreover, far from being "crucial," how the Commission ran its investigation is wholly irrelevant to the preliminary injunction hearing – and to this litigation generally. Furthermore, to the extent you will argue that such testimony is somehow relevant to the equitable estoppel and "unclean hands" affirmative defenses, for the reasons set

Gregory Bartko
September 2, 2009
Page 5


forth above, those affirmative defenses are fatally flawed, and should be stricken. For these reasons, we ask that you withdraw your request to call Mr. Hanauer as a witness at the preliminary injunction hearing.

*          *          *

Concerning the other matters addressed in your letter: (1) I have been advised by Ms. Aguilar that she does not have an updated resume or vitae. To the extent you are requesting that we generate such a document between now and the hearing, we decline to do so, as such an exercise is beyond the scope of pre-hearing discovery. (2) Please produce documents responsive to the following paragraphs of your clients' disclosures: 2, 3, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 21, 22, 23.

Lastly, please confirm that you represent Ms. Traver in this matter. (When we last discussed this matter, you informed us that the retention agreement consummating the representation was in the mail.) Absent such a confirmation by September 8th, we will operate under the assumption that you do not represent her.

I am available to discuss this matter with you further at your convenience. Please apprise us of your position regarding the foregoing no later than Tuesday, September 8th.


Sincerely,


Jonathan S. Polish

# EXHIBIT 4



LAW OFFICE OF

*Gregory Bartko, Esq.*

ATTORNEY AT LAW

*A Limited Liability Company*

VIA EMAIL AND
<u>FIRST CLASS MAIL</u>

September 8, 2009

SECURITIES AND
EXCHANGE COMMISSION
Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, Div. of Enforcement
175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604

Re: United States Securities and Exchange Commission
Vs. John J. Bravata, et al.; United States District Court—Eastern
<u>District of Michigan; File No.: 2:09-cv-12950-DML</u>

Dear Counsel:

I have spent considerable time reviewing your September 2, 2009 letter. It is confusing to me why the Commission would spend time and legal resources attacking my clients' responsive pleadings at this premature stage of the proceedings at hand. It is equally confusing why the Commission would object so strenuously in opposition to our interest in calling Ben Hanauer as a witness at the October 1-2, 2009 evidentiary hearing. I would like to take time today to outline my clients' legal position on why the Commission's arguments are flawed on several fronts. Your letter requests my clients to (i) withdraw their affirmative defenses; and (ii) discontinue any efforts in calling Ben Hanauer as a witness at the evidentiary hearing. Although we decline both invitations, a good start might be for Mr. Hanauer to provide a detailed factual affidavit that identifies each of the steps taken by the Commission in obtaining the *ex-parte* relief we believe to be inappropriate.

### Affirmative Defenses

In *SEC v. Blavin*, 760 F.2d 706, 1985 U.S. App. LEXIS 31030, Fed. Sec. L. Rep. (CCH) P 92,021, the Sixth Circuit made it clear that equitable estoppel may be pleaded as an affirmative defense against the Government and/or agencies thereof. The *Blavin* decision is still good law in the Eastern District of Michigan. I did not see the decision mentioned anywhere in your letter. Demanding that the Bravata Defendants withdraw certain affirmative defenses raised in opposition to the Commission's Complaint when no Defendant in the action has had any opportunity to conduct discovery is nonsense. Even more so since the Commission has had an unfettered power of investigation of the affairs of BBC and BFG since late March, 2009. The Federal Rules of Civil Procedure do not require the Bravata Defendants to establish a detailed factual basis for any affirmative defense at this stage in the proceedings. Instead, as explained below, the Commission's threats of moving to strike our affirmative defenses shiould be denied if "any state of facts . . . could be proved in support of the

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, SEC Div. of Enf.
September 8, 2009
pg. 2

defense." *FDIC v. Gladstone*, 44 F. Supp. 2d 81, 84-85 (D. Mass. 1999). At this stage of the proceeding, our affirmative defenses have been raised in good faith and are appropriate in defense of the Commission's claims for equitable relief. In order to seek equity—one must do equity.

Surreptiously filing a motion seeking emergency, *ex-parte* relief as the Commission did in this action on July 27, 2009 violates a number of legal requirements, principals and trampled unmercifully the due process rights of the Bravata Defendants. The Commission knew who was representing the Defendants. The Government has to play fair and square; follow the rules as any private litigant has to and should be prohibited from gaining an enormous advantage over any Defendant in this case based upon the Commission's own shortcuts and gorilla-like tactics.[1]

The process of discovery is likely to reveal and clarify additional facts and evidence relating to the Commission's conduct that contributed to the Bravata Defendants being in their current predicament—that is suffering the ill effects of a complete asset freeze and ruination of a promising managed real estate fund. Neither the case law nor the Federal Rules of Civil Procedure contemplate the striking of affirmative defenses before there is a full opportunity to discover all relevant facts.

### *Motions to Strike Affirmative Defenses Are Disfavored.*

Your letter implies rather strongly that if the Bravata Defendants do note accede to Commission demands, that a motion to strike our affirmative defenses will be filed. In general, motions to strike affirmative defenses under Fed. R. Civ. P. 12(f) are disfavored and "should be granted only when it is beyond cavil that the defendant could not prevail on them." *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998) (Gorton, J.) (citing *Coolidge v. Judith Gap Lumber Co.*, 808 F. Supp. 889, 893 (D.N.J. 1991)).  Accord *FDIC v. Gladstone*, 44 F. Supp. 2d 81, 84-85 (D. Mass. 1999) (motion to strike "will be granted only if it clearly appears that the plaintiff would succeed despite any state of facts which could be proved in support of defense").  Courts disfavor such motions because they "are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." *SEC v. Sands*, 902 F.Supp. 1149, 1165-66 (C.D. Cal. 1995) (citations omitted), *aff'd sub nom.*, *SEC v. First Pacific Bancorp*, 142 F.3d 1186 (9th Cir. 1998); accord 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381, at 421 (3d ed. 2004).

---

[1] Because we are prepared to set forth specific allegations regarding Commission misconduct in any opposition to a motion to strike that may be contemplated by the Commission, the cases relied upon by the SEC for the contention that we have failed to plead grounds for the affirmative defense of estoppel are inapplicable.  *See SEC v. Sarivola*, No. 95 Civ. 9270 (RPP), 1996 WL 304371, at *2 (S.D.N.Y. June 6, 1996) (striking defense where defendant failed to plead "or set forth in their motion papers" any inequitable conduct by government); *SEC v. Hayes*, No. CA 3-90-1054-T, 1991 WL 236846, at *2 (N.D. Tex. July 25, 1991) (defendants failed to set forth government misconduct in either answer or in response to SEC's motion to strike).  If the Court prefers, the Bravata Defendants may seek to amend the Answer and Affirmative Defenses to include more specific factual allegations of Commission misconduct.  Because none of the Commission's allegations have yet been tested in the discovery process, we do not accept all of the Commission's allegations as necessarily true or supported by any evidence other than the self-serving Declaration of Luz Aguilar.

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, SEC Div. of Enf.
September 8, 2009
pg. 3

For these reasons, the Commission must show that it will be prejudiced if the affirmative defenses raised are not stricken. *See Augustus v. Board of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) ("[W]hen there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed . . . questions of law upon a motion to strike."); *see also Breedlove v. Cabou*, 296 F. Supp. 2d 253, 275 (S.D.N.Y. 2003); 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.37[3] (3d ed. 2005); Wright & Miller § 1381, at 421-22.

Motions to strike affirmative defenses are particularly disfavored where, as here, they are brought prior to the completion of discovery. *See Augustus*, 306 F.2d at 868 ("Under such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of the allegations for determination on the merits."); Wright & Miller § 1381, at 423-25. Accordingly, district courts have routinely denied pre-discovery motions to strike filed by the SEC. *See, e.g.*, *Sands*, 902 F. Supp. at 1165 (SEC's initial motion to strike defendant's equitable defenses denied without prejudice until after discovery); *SEC v. CS First Boston Corp.*, No. SA CV 96-1253 GLT, slip op. at 2 (C.D. Cal. Feb. 24, 1997) ("At this pleading stage in the proceedings, the court cannot rule out the possibility the defendants can show the SEC acted in a manner which caused serious injustice to Defendants."); *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1994 WL 67826, at *2 (S.D.N.Y. Mar. 3, 1994) (denying motions to strike defenses because issues are better addressed in concrete factual setting). In this case, it is hardly "beyond cavil" that the Bravata Defendants will not be able to prevail on an equitable estoppel defense.

### *Controlling Case Law Allows Bravata Defendants to Assert the Defense of Estoppel Against the Commission.*

Your letter cites only legal precedent intimating that the Commission is never subject to the defense of equitable estoppel. In *FDIC v. Gladstone*, however, the court specifically held that the defense may be asserted against the Government. 44 F. Supp. 2d at 90. In fact, the Court based its conclusion on the same Supreme Court decision in 1984 cited regularly for that very proposition: *Heckler v. Community Health Servs., Inc.*, 467 U.S. 51 (1984). In *Heckler*, the Supreme Court acknowledged the possibility that "the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Id.* at 60-61, *quoted in Gladstone*, 44 F. Supp. 2d at 90. The *Gladstone* ruling is consistent with the overwhelming weight of authority that has addressed the issue. *See, e.g.*, *Fredericks v. Commissioner of Internal Revenue*, 126 F.3d 433, 438 (3d Cir. 1997) ("This court is among the majority of circuits recognizing estoppel as an equitable defense against government claims."); *Portmann v. United States*, 674 F.2d 1155, 1165 (7th Cir. 1982) ("Our conclusion that equitable estoppel may be available against the government . . . is supported by numerous decisions of this and other courts of appeal."); *Watkins v. United States Army*, 875 F.2d 699, 706 (9th Cir. 1989) ("where justice and fair play require it, estoppel will be applied against the government") (citations omitted); *Investors Research Corp. v. SEC*, 628 F.2d 168, 174 n.34 (D.C. Cir. 1980) ("The fundamental principle of equitable estoppel applies to government agencies, as well as private parties."). Courts have therefore rejected your contention that the Commission is immune to the defense of estoppel. *See Investors Research Corp. v. SEC*, 628 F.2d at 174 n.34; *SEC v. Sands*, 902 F. Supp. at 1166 (stating that defendants asserted "viable" estoppel defense and that the "Court should not weigh the evidence for purposes of a motion to strike an affirmative defense"); *SEC v. Dunlap*, No. 01-8437-CIV-MIDDLEBROOKS, slip op. at 4

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, SEC Div. of Enf.
September 8, 2009
pg. 4

(S.D. Fla. Nov. 14, 2001) (defendant "should not be precluded now from at least attempting to develop this theory of defense"); *SEC v. CS First Boston Corp.*, at 2 & n.1 (holding that dismissal was improper at "this pleading stage" and finding "no support in recent case law for the SEC's argument that it cannot be estopped from enforcing laws of general applicability"); *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1994 WL 67826, at *2 (S.D.N.Y. Mar. 3, 1994) (defense challenging alleged government misconduct "would be better addressed in a concrete factual setting"). Even one of the SEC's own administrative law judges acknowledged that the Supreme Court's decision in *Heckler* "leaves open the possibility that a situation could arise where estoppel would apply against the government."  *See In the Matter of Thorn, Welch & Co., Inc.*, Admin. Pro. File No. 3-8400, 1994 WL 570073 (Oct. 13, 1994).

We do, however, agree with you in one respect, which is that, "the government may not be estopped on the same terms as any other litigant."  *Heckler*, 467 U.S. at 60.  Specifically, the First Circuit has observed that in considering an estoppel claim asserted against the Government, a court should weigh private interests and principles of fairness against the public interest in "the enforcement of congressionally mandated public policy." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985). Nevertheless, like the Supreme Court, the First Circuit has consistently rejected a "flat rule" against estoppel in cases involving the Government, *see Heckler*, 467 U.S. at 60-61, but instead has left it to district courts to exercise their equitable discretion after hearing and assessing all the relevant facts and circumstances. (emphasis added) *See, e.g.*, *Frillz, Inc. v. Lader*, 104 F.3d 515, 518 (1st Cir. 1997) (affirming summary judgment where record contained "absolutely no evidence" supporting estoppel claim against government); *Ven-Fuel*, 758 F.2d at 761 (affirming decision to deny estoppel defense where "all of the proof on the question" was before district court, and judge "carefully examined the relevant evidence").

The cases relied upon in your letter are by no means controlling authority in the Eastern District of Michigan. Your letter fails to recognize or even discuss *SEC v. Blavin*, 760 F.2d 706, 712 (6th Cir. 1985), (describing district court's statement of law as "questionable" and declaring that "[e]stoppel may be available against the Commission in the present case," but affirming summary judgment where defendant's evidence did not establish traditional elements of estoppel).[2]  The Commission wishes to focus strictly on the Bravata Defendants, when in fact, the Commission is a litigant like many others, required to "follow the rules of fair play" or suffer the consequences of not doing so. Mischaracterizing statements of "fact" in its papers in support of emergency, *ex-parte* relief; badgering third-party witnesses who do not wish to concur with the Commission's theory of its case; failing to interview key witnesses in its investigation, such as the Chief Financial Officer for BBC and BFG; failing to even review the entire set of Quick Books financial reporting for BBC and BFG before declaring a dire emergency requiring *ex-parte* relief;[3] failing to manage its own agency

---

[2] Even if the question of whether the affirmative defense of equitable estoppel is available against the Government were close, which it is not, the existence of such a disputed legal issue would preclude striking the defense.  *See Sands*, 902 F. Supp. at 1166 ("Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike."); Wright & Miller § 1381, at 423-25.

[3] Although any assertion at this juncture must be made upon information and belief, the Bravata Defendants' review of ALL materials submitted to the Court in support of the Commission's emergency motion for *ex-parte* relief on July 27, 2009 suggests rather strongly that Michigan Rules of Professional Conduct 3.3(d) was NOT complied with during the Commission's efforts to obtaining *ex-parte* relief against the Defendants in this case. The Comments to Rule 3.3(d) state: **Ex Parte Proceedings Ordinarily:** An advocate has the limited responsibility of presenting one side of the matter that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party.

Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, SEC Div. of Enf.
September 8, 2009
pg. 5

books and records as declared to the public by its own Office of Inspector General—all are considerations that should be explored during the pendency of this case. We believe the defenses of estoppel and unclean hands are appropriately asserted. *See United States v. Rexach*, 558 F.2d at 43 (applying equitable estoppel where government changed its position); *United States v. Lazy FC Ranch*, 481 F.2d 985, 989-90 (9th Cir. 1973) (applying equitable estoppel because agency regulations arguably permitted conduct in question); *Sands*, 902 F. Supp. at 1166 (allegations that SEC "tacitly approved all alleged conduct" were sufficient to state viable estoppel defense). The key question in evaluating an estoppel defense against a Government agency such as the Commission is whether citizens like the Bravata Defendants are entitled to "some minimum standard of decency, honor, and reliability in their dealings with the Government," *see Heckler*, 467 U.S. at 60-61 — not whether they have been treated fairly by the particular Government agency that has filed a lawsuit against them. As noted earlier, in *United States v. Rexach*, the First Circuit held that in a case involving misconduct by one Government department (the State Department) but prosecuted by a different one (the Justice Department), the defendant could proceed with a defense of estoppel "against the United States." 558 F.2d at 43. "The right hand," the First Circuit explained, "will not be permitted to demand payment for something which the left hand has taken away." *Id.*

> ### The Commission Cannot Establish That It Will Be Prejudiced If the Affirmative Defenses are not Stricken.

Your letter establishes no showing of any prejudicial harm that could result from the assertion of our affirmative defenses, which is an independent ground for denying any motion to strike. The Commission is unable to suggest or establish that it will experience some unusual hardship if the Bravata Defendants are allowed to proceed. Instead, your letter implies that striking our affirmative defenses will narrow and simplify the presentation of the case and save the parties and the Court time and resources. Using that theory, one could assert that prohibiting the defendants in civil litigation from presenting evidence or examining witnesses called by a plaintiff would be appropriate as a means of saving time and judicial resources. This is wholly insufficient. *See SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1995 WL 456402, at *5 (S.D.N.Y. Aug. 2, 1995) (denying SEC's motion to strike affirmative defense because it failed "to specify what time or expense would be saved, or what complexity would be eased, by granting the request . . . [and] rel[ied] only on a suggestion that the inclusion of the defense will increase the time and expense of trial"). In fact, the Commission cannot make any real showing of prejudice because the factual predicates for our estoppel defenses are interwoven with the elements of the Commission's *prima facie* case on all counts in the Complaint. We will seek through discovery information about the Commission's misconduct, mistakes, and misrepresentations not only to prove our affirmative defenses, but also to explain why the Commission's claims should be dismissed due to its own malfeasant conduct leading up to the filing of this action on July 26, 2009.

*SEC v. Packetport.com, Inc. et al*., U.S. District Court for the District of Connecticut, Case No. 3:05-cv-1747 (JCH), 2006 U.S. Dist. LEXIS 73638, September 28, 2006 is illustrative of the availability of several types

---

However, in an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts that are known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.

Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, SEC Div. of Enf.
September 8, 2009
pg. 6

of affirmative defenses in SEC civil enforcement actions. In *Packetport.com, Inc*., the defendants' affirmative defenses included the doctrines of estoppel, waiver, and laches claiming that those defenses were a bar to the SEC seeking relief against them. The SEC contended, as you do in your letter, that it is exempted from these common law defenses because it is effectuating its public mission by bringing civil enforcement cases. The court found no legal basis for the application of the laches doctrine because the Government was acting in the public interest in bringing an enforcement action. (See *SEC v. Willis,* 777 F.Supp. 1165, 1175 (S.D.N.Y. 1991) ("[T]he SEC is acting in the public interest by attempting to enforce effectively the federal securities laws under its statutory mandate."). <u>However, the court refused to strike the defendants' equitable estoppel defense</u>. (emphasis added) The court remarked that "[T]o establish a defense of equitable estoppel, a defendant must demonstrate that: 1) the party to be estopped [made] a misrepresentation of fact to the other party with reason to believe that the other party [would] rely upon it; 2) and the other party reasonably relie[d] upon it; 3) to her detriment." *Kosakow v. New Rochelle Radiology Assocs*., P.C., 274 F.3d 706, 725 (2d Cir. 2001). While the court voiced no opinion in *SEC v. Packetport.com, Inc. et al, supra,* on whether the defendants' affirmative defense of equitable estoppel would survive a summary judgment motion, the court concluded that striking the defense on the pleadings alone would be premature. The court refused to consider whether the length of delay and the manner in which it occurred could not constitute conditions severe enough to constitute "affirmative misconduct by the government." See *id*. "As such, the court cannot conclude at this time that there is no set of facts provable under the pleadings that would entitle the defendants to prevail on their affirmative defense." *Id*.[4]

### *Propriety of Calling Ben Hanauer as a Witness at the Evidentiary Hearing*

Your letter mistakenly evaluates this issue against several SEC cases where defendants sought to compel deposition testimony by a Rule 30(b)(6) witness employed by the Commission. We have issued no notices to take any depositions—in fact, that is prohibited in this case as you know. It is no secret that Mr. Hanauer was integrally involved in the investigation of the Bravata Defendants prior to the July 26, 2009 filing of the Commission's Complaint. We believe he was instrumental in the process of obtaining emergency, *ex-parte* relief from the Court which we believe strongly to have been violative of Fed. R. Civ. Pro. 65(b), MCPR 3.3(d) and other requirements. We have reason to believe that Mr. Hanauer inappropriately badgered on or more witnesses into signing sworn affidavits or declarations unfavorable to the Bravata Defendants when in fact, at least one such witness flatly refused to do so. At the evidentiary hearing, we expect the propriety of obtaining the emergency, ex-parte relief by the Commission will be highly relevant—making Mr. Hanauer a witness we are entitled to elicit testimony from. I can assure you we are not engaging in dramatics or clumsy strategies as your letter implies, but we are interested in evidencing the steps Mr. Hanauer took in securing emergency, *ex-parte* relief far in excess of even that which was warranted assuming the allegations in the Commission's Complaint were deemed to be true. This stage of the proceeding is still very relevant to where we are today,

---

[4] *SEC v. Packetport.com, Inc. supra*, is an interesting case. Even though the SEC ultimately convinced the District Court to reconsider its dismissal of the case against multiple defendants, the SEC ultimately realized that it simply was not able to establish violations of the securities laws. Subsequent to reconsideration, an upon motion of the SEC, the claims brought by the Commission were subsequently dismissed. *SEC v. Packetport.com, Inc*., 2007 U.S. Dist. LEXIS 20839 (D. Conn., Mar. 21, 2007). Of course this was after years of litigation, irreparable damage to reputations and hundreds of thousands of dollars of legal fees if not more. Legal commentators have espoused the view that cases such as *Packetport.com* should give rise to the manner that the Commission chooses to bring enforcement actions and under what circumstances.

Jonathan S. Polish, Esq., and
Benjamin J. Hanauer, Esq.
Senior Trial Counsel, SEC Div. of Enf.
September 8, 2009
pg. 7


since if the rules had been followed by the Commission, the Bravata Defendants would have had their due process rights remain intact rather than eviscerated by the Commission.

      I am available pretty much this entire coming week to confer with your further if you believe that is required, i.e. if the Commission intends to file any motion for relief requiring a conference with counsel as a predicate thereto.

Sincerely,

Gregory Bartko, Esq.
Law Office of Gregory Bartko, LLC

Cc: George B. Donnini, Esq. (via email)
    Gary Saretsky, Esq. (via email)
    Melissa Traver (via email)
    John J. Bravata (via email)
    Earle I. Erman, Esq. (via email)

*"The Securities Regulation Law Firm"*

3475 Lenox Road, Suite 400 ● Atlanta, GA 30326 ● Phone (404) 238-0550 ● Fax (866) 342-4092
Email: gbartko@securitieslawcounsel.com ● www.securitieslawcounsel.com

## CERTIFICATE OF SERVICE

Jonathan S. Polish, an attorney, hereby certifies that on September 15, 2009, he caused the foregoing submission to be filed with the Clerk of Court using the CM/ECF system.

/s/ Jonathan S. Polish