**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| United States Securities and Exchange Commission, | ) | Case No. 2:09-CV-12950-DML-VMM |
| | ) | |
| | ) | Judge David M. Lawson |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| John J. Bravata, Richard J. Trabulsy, | ) | |
| Antonio M. Bravata, BBC Equities, LLC, | ) | |
| Bravata Financial Group, LLC, and | ) | |
| Shari A. Bravata, | ) | |
| | ) | |
| Defendants. | ) | |

*   *   *

**MOTION TO INTERVENE OF THE HUNTINGTON NATIONAL BANK AND
MEMORANDUM IN SUPPORT**

Jonathan S. Polish
James G. Lundy
Benjamin J. Hanauer
175 W. Jackson Blvd., Ste. 900
Chicago, IL  60604
312.353.6884 (Polish)
312.353.0878 (Lundy
313.353.8642 (Hanauer)
polish@sec.gov
lundyj@sec.gov
hanauerb@sec.gov
*Attorneys for the Commission*

Thomas P. Dillon (P55191)
Shumaker, Loop & Kendrick, LLP
1000 Jackson Street
Toledo, OH  43604
419.241.9000
tdillon@slk-law.com
*Attorneys for The Huntington National Bank*

Michael J. Riordan
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
313.226.9602
michael.riordan@usdoj.gov
*Local Counsel for the Commission*

George B. Donnini
Joseph E. Richotte
Butzel Long, PC
150 W. Jefferson Ave., Ste. 100
Detroit, MI 48226
313.225.7000
klimkojg@butzel.com
donnini@butzel.com
richotte@butzel.com
*Attorneys for BBC Equities, LLC &
  Bravata Financial Group, LLC*

Gregory Bartko
Law Office of Gregory Bartko, LLC
3475 Lenox Rd., Ste. 400
Atlanta, GA 30326
404.238.0550
gbartko@securitieslawcounsel.com
*Attorney for the Bravatas*

## **ISSUE PRESENTED**

Whether the Court should issue an order allowing Huntington to intervene as of right and/or permissively in this case, when [1] under 14 Mortgages, Huntington has an interest in 13 Mortgaged Properties; [2] Huntington's rights are senior to the rights of all parties to this case; [3] it is claimed that the Stay, and the Court's September 2, 2009 Receivership Order are impairing and impeding Huntington's ability to protect its property; and [4] no party to this case can adequately protect Huntington's interest?

Huntington's Answer: "Yes"

BBC Defendants' answer: "No."

SEC's answer: "No."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

On Huntington's intervention as a matter of right:

1.    FCRP 24(a)

2.    *Coalition To Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007)

3.    *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).

On Huntington's permissive intervention:

1.    FRCP 24(b)

2.    *Michigan State AFLCIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).

# TABLE OF CONTENTS

ISSUE PRESENTED ...................................................................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................................... ii

MEMORANDUM IN SUPPORT ........................................................................................ 1

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

III.  LAW AND ARGUMENT ........................................................................................... 4

    A.   Huntington Must Be Granted Leave to Intervene as of Right ........................... 4

        1.   A Party Has a Right to Intervene When [i] Its Motion is Timely; [ii] It Has a Substantial Legal Interest in the Case; [iii] It Will Not Be Able to Protect That Interest Without Intervention; and [iv] No Party to the Case Can Adequately Protect that Interest. .............................................................. 4

        2.   Huntington's Motion to Intervene is Timely ........................................... 5

        3.   Huntington Has a Substantial Interest in the Mortgaged Properties and Huntington Loans. .................................................................................... 6

        4.   The Case Impairs (Prohibits) Huntington in (from) Protecting Its Substantial Interest as Mortgagee Without Intervention ........................ 7

        5.   The SEC and the Receiver Do Not Adequately Represent Huntington's Interests Because They Represent Interests Directly Adverse to Huntington. ............................................................................................... 8

    B.   Huntington must be granted leave to permissively intervene because its claims share a common question of law and fact with the case ............................... 10

IV.   CONCLUSION ......................................................................................................... 12

CERTIFICATE OF SERVICE ......................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Americans United for Separation of Church and State v. City of Grand Rapids*,
    922 F.2d 303 (6th Cir. 1990) ...................................................................8

*Biodiesel Capital Management LLC, v. Biodiesel of Mississippi, Inc.*,
    No. 06-2061BV, 2006 U.S. Dist. LEXIS 11236................................6

*Biodiesel*, No. 0 2006 U.S. Dist. LEXIS 11236 ................................................8

*Bradley v. Milliken*,
    828 F.2d 1186 (6th Cir. 1987) .............................................................6

*Coalition To Defend Affirmative Action v. Granholm*,
    501 F.3d 775 (6th Cir. 2007) ...............................................................4

*Federal Deposit Insurance Corp. v. Eagle*,
    524 F.2d 1339 (9th Cir. 1975) .............................................................6

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ........................................................6, 7, 9

*In the Matter of the Arbitration Between Holborn Oil Trading Ltd.*,
    658 F. Supp. 1205 (S.D.N.Y. 1987)....................................................7

*Jansen v. City of Cincinnati*,
    904 F.2d 336 (6th Cir. 1990) ...............................................................9

*Jordan v. Michigan Conf. of Teamster Welfare Fund*,
    207 F.3d 854 (6th Cir. 2000) ...............................................................5

*Linton v. Commissioner of Health & Environment*,
    973 F.2d 1311 (6th Cir. 1992) .............................................................8

*Louisville Joint Stock Land Bank v. Radford*,
    295 U.S. 555 (1935)..........................................................................6, 7

*Michigan State AFLCIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997) ...............................................6, 7, 8, 10

*Morocco v. Nat'l Union Fire & Insurance Co.*,
    2003 U.S. Dist. LEXIS 17918 (S.D. Ohio Oct. 9, 2003) *citing, Redlandis Co.*
    *v. Chillingsworth Venture Ltd.*, 171 F.R.D. 206 (N.D. Ohio 2001)............................10

*Purnell v. City of Akron,*
    925 F.2d 941 (6th Cir. 1991) ...............................................................6, 7, 9, 10

*Sec. and Exch. Commission v. Flight Transport Corp.,*
    699 F.2d 943 (8th Cir. 1983) .................................................................6, 7, 9

*Sec. and Exch. Commission v. Kings Real Este Investment Trust,*
    222 F.R.D. 660 (D. Kan. 2004)..............................................................11, 12

*Stupak-Thral v. Glickman,*
    226 F.3d 467 (6th Cir. 2000) ......................................................................4

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972)....................................................................................8

*Triax Co. v. TRW, Inc.,*
    724 F.2d 1224 (6th Cir. 1984) ....................................................................9

*United States v. Michigan,*
    424 F.3d 438 (6th Cir. 2005) ....................................................................11

## STATE CASES

*Credit Based Asset Servicing & Securitization, LLC v. Flagstar Bank, FSB,*
    No. 273198, 2007 Mich. App. LEXIS 825 (a mortgage is a conveyance under
    Michigan law) ...........................................................................................7

## DOCKETED CASES

*Apostolakos v. Panagouleas,*
    12th Dist. No. 19187, 2002-Ohio-2166 ......................................................7

## FEDERAL STATUTES

F.R.C.P. 24(a) ...................................................................................................4, 6

F.R.C.P. 24(b) ...............................................................................................10, 12

Pursuant to Federal Rules of Civil Procedure ("FRCP") 24(a) and 24(b), Intervenor-Defendant The Huntington National Bank ("Huntington") moves the Court for an order allowing it to intervene in this case. Huntington's proposed Answer and Affirmative Defenses and proposed Motion for Abandonment of Properties by the Receiver and Relief from Stay and Brief in Support are attached as Exhibits 1 and 2 respectively.

The grounds for this motion to intervene are that, [1] under 14 mortgages ("Mortgages"), Huntington has an interest in 13 properties ("Mortgaged Properties"); [2] it is claimed that the Mortgaged Properties are covered by the July 27, 2009 Temporary Restraining Order ("TRO"), as continued by the Court's Order Granting the Plaintiff's Motion for Preliminary Injunction and Continuing the Order Freezing Assets ("Preliminary Injunction" and, collectively with the TRO, "Stay") and the Court's September 2, 2009 Order Appointing Receiver ("Receivership"); [3] this case is impairing and impeding Huntington's ability to protect its property; [4] Huntington's rights are senior to the rights of all parties to this case; and, [5] no party to this case can adequately protect Huntington's interest.

Upon intervention, Huntington will move the Court for an order abandoning the Mortgaged Properties and granting relief from the Stay. The grounds for that Motion are that: [1] Huntington's Loans secured by the Mortgages exceed the value of the Mortgaged Properties; [2] the cost of securing and protecting the Mortgaged Properties is burdensome to this case with no offsetting value; [3] the Receivership has no funds to secure and protect the Mortgaged Properties; [4] Huntington's property rights are senior to the rights of all other parties; [5] Huntington's Loans are unrelated to the activities alleged in the Complaint; and [6] Huntington is not being compensated for the impairment of its rights.

This motion is supported by the pleadings, attached exhibits, Affidavit of Felix Melchor ("Melchor Affidavit") (Exhibit 3), and the following memorandum in support. Pursuant to E.D. Mich. LR 7.1(a)(2), Huntington states that it conferred with the attorneys for the parties to explain the nature of the motions that Huntington would be making and the legal basis for the motions, and requested, but did not obtain complete concurrence for the relief sought.[1]

Respectfully submitted,

s/Thomas P. Dillon
Thomas P. Dillon (P55191)
SHUMAKER, LOOP & KENDRICK, LLP
Attorneys for The Huntington National Bank

---

[1] Attorneys for Huntington conferred with attorneys for the Plaintiff and Securities and Exchange Commission by telephone and email beginning in the last week of July 2009 and into the first week of August 2009. Counsel for Huntington conferred with the Receiver in the third week of September 2009 and had follow-up communications in the fourth week of September 2009. Counsel for Huntington attempted to confer with all parties by email to all counsel of record starting September 24, 2009.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Huntington seeks to intervene to protect its 13 Mortgaged Properties securing 9 Huntington Loans to Phil & Rebecca's, LLC (a "**Borrower**") and 5 Huntington Loans to Rockland Development, Ltd. (a "**Borrower**").  None of the Huntington Loans relate to any of the activities alleged in the Complaint.[2]  All of the Huntington Loans have been reduced to judgment, and the aggregate unpaid balances of the judgments exceed the value of the Mortgaged Properties by a substantial amount.[3]  *See* Melchor Affidavit, ¶¶ 4, 13, Exhibit B (B1-B4).  The value of the Mortgaged Properties is so low that Huntington will never be fully paid from the sale of the properties.    To make matters worse, the Mortgaged Properties require immediate expenditures to reduce continuing deterioration in value, causing further loss to Huntington and no benefit to anyone else.  *Id.* at ¶ 16.  The Receiver does not have funds to secure and maintain the Mortgaged Properties.  *See* Receiver's Statement Regarding U.S. Securities And Exchange Commission's Motion For An Order To Show Cause Why Defendant John Bravata Should Not Be Adjudicated In Civil Contempt For Violating The Court's Asset Freeze Orders, ¶ 16, (Doc. No. 71) ("Receiver's Statement").    Intervention will allow Huntington an opportunity to be heard, and protect its property.

Specifically, Huntington seeks to remove the Mortgaged Properties from the Stay and Receivership so that Huntington may secure and protect the Mortgaged Properties and pursue its rights as mortgagee against the current title holders and other parties claiming an interest in the Mortgaged Properties.  The equitable grounds for doing so are very practical; the economic

---

[2]    The Huntington Loans predate the earliest alleged fraud in the Complaint.  Neither of the Borrowers is related to any of the defendants.

reality is that the Mortgaged Properties will only burden the Receiver and will yield no benefit to the alleged victims in this Case. The legal grounds for removing the Mortgaged Properties are that the Stay and Receivership deny Huntington its property as mortgagee without compensation.

## II.    STATEMENT OF FACTS

From 2001 through April 2006, Huntington made the 14 Huntington Loans to the Borrowers and received the Mortgages against the Mortgaged Properties to secure their repayment.[4] Melchor Affidavit, ¶ 8. About 20 months after the last Huntington Loan closed, at the end of December 2007 and in early 2008, Borrowers transferred each of the Mortgaged Properties to a separate limited liability company (each a "**Transferee**") in which Philip Cargnino was the sole member. *Id.* at ¶ 9. Around the same time, Cargnino transferred his membership in the Transferees to BBC Equities, LLC ("**BBC**"). These transfers were made without Huntington's knowledge, in violation of the Mortgages and other loan documents, and without either of the Borrowers appearing to have received any value in return. After discovering the transfers, Huntington declined to consent. *Id.*

None of the Huntington Loans are in any way related to any of the activities described in the Complaint, and none of the Borrowers are related to any of the defendants to the Complaint. *Id.* at ¶ 4. For example, the Huntington Loans predate the activities alleged in the Complaint. *Compare* Melchor Affidavit, Exhibit A *with* Complaint, ¶17. Huntington played no role in the transfer of the Mortgaged Properties to the Transferees or the transfer of ownership of the

---

[3]    Each mortgage cross collateralizes all other loans that Huntington has made to the mortgagor.

[4]    Although each Mortgage includes an assignment of rents, separate rent assignment were made and recorded for each of the Mortgaged Properties. Each Borrower also granted security interests in all of its property.

Transferees to BBC. Melchor Affidavit ¶ 9. Huntington received some payments from the Transferees, which were applied to reduce the balances of the Huntington Loans.

The Transferees have abandoned all of the Mortgaged Properties, including some that were abandoned before these proceedings commenced, and all management and maintenance of the Mortgaged Properties has ceased. *Id.* at ¶ 15. All 14 Huntington Loans have been reduced to judgment. *Id.* at ¶ 4, Exhibits B1-B4. The judgments exceed offers to purchase the Mortgaged Properties by over $ 5,800,000. *Id.*, Exhibit A. Copies of the mortgages securing Huntington's Loans are attached as Exhibits C1-C8, C10, D1-D4, and D6 to the Melchor Affidavit.[5] *See also Id.* at Exhibits E1, E3-E8, E10, F1-F4, F6 and G for copies of other security documents.

Huntington has been doing a significant amount of work to collect its Loans and to prepare for selling the Mortgaged Properties through judicial proceedings and to maintain them pending sale. *Id.* at ¶¶ 4, 13-14. Seven of the Mortgaged Properties are in foreclosure proceedings that include claims for the appointment of a receiver and recovery from the Transferees under the Uniform Fraudulent Transfer Act and other claims. Huntington has arranged for a receiver, property manager and broker for these properties (as well as the six other Mortgaged Properties). *Id.* at ¶ 14. The Stay prevented Huntington from completing these actions and similar actions for the other six Mortgaged Properties. Huntington has been marketing all 13 properties, and has negotiated prices that are reasonable. *Id.* at ¶ 15, Exhibit A.

The Mortgaged Properties are declining in value, directly injuring Huntington's property, especially now that all have been abandoned and Huntington is prevented from acting fully.[6] *Id.*

---

[5]   The separate assignments of rent and security agreements have not been attached, but are available for inspection. Copies have been given to the Receiver.

[6]   The Receiver is permitting Huntington to take some protective action to the extent that Huntington can obtain any rents to pay for it. Any additional action is not permitted without further order of the Court.

at ¶¶ 12, 16.  Nine of the Mortgaged Properties are coin operated car washes that require daily

maintenance and are subject to vandalism and theft.  *Id.* at ¶ 16.  Other Mortgaged Properties

have tenants and need maintenance.  Notices to disconnect utilities also have been received.  *Id.*,

Exhibit H.

Because of the Stay and Receivership, Huntington cannot prevent or reduce deterioration

of the Mortgaged Properties or close on offers to purchase the Mortgaged Properties.  Huntington

is in a position to take immediate action to protect and sell the Mortgaged Properties in state

court foreclosure and receivership proceedings immediately upon relief by this Court.

### III.  LAW AND ARGUMENT

**A.    Huntington Must Be Granted Leave to Intervene as of Right.**

**1.    A Party Has a Right to Intervene When [i] Its Motion is Timely; [ii] It Has a Substantial Legal Interest in the Case; [iii] It Will Not Be Able to Protect That Interest Without Intervention; and [iv] No Party to the Case Can Adequately Protect that Interest.**

Under FRCP 24(a)(2), Huntington is permitted to intervene as a matter of right.  FRCP

24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is situated that disposing of the action may as a practical matter impair or impeded the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Huntington meets the requirements to intervene as a right: (i) its motion to intervene is timely;

(ii) it has a substantial legal interest in the subject matter of the case; (iii) its ability to protect its

interest will be impaired if not permitted to intervene; and (iv) the parties already before the

Court cannot adequately protect its interest.  *See Coalition To Defend Affirmative Action v.*

*Granholm*, 501 F.3d 775, 779 (6th Cir. 2007); *Stupak-Thral v. Glickman*, 226 F.3d 467, 470 (6th

Cir. 2000).

2.    **Huntington's Motion to Intervene is Timely.**

Huntington's motion has been timely filed. In considering whether a motion to intervene is timely filed, the Court should consider five factors: (1) the point to which the lawsuit has progressed; (2) the purpose for which the intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of the interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure to apply promptly for intervention; and, (5) the existence of unusual circumstances militating against or in favor of intervention. *See Jordan v. Michigan Conf. of Teamster Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000). These considerations all show that Huntington's motion is timely.

The Case has not progressed to the point where Huntington's intervention would present a problem to its timely litigation. This Case was filed on July 26, 2009, and is still in its early stage. The TRO was granted on July 27, 2009, the day after the Case was filed. The Preliminary Injunction was granted on August 4, 2009. The Receivership was granted on September 2, 2009. Huntington has filed this motion to intervene about two and one-half months after learning of the Case and the Preliminary Injunction, only weeks after learning of the Receivership, and then only after initial attempts to resolve matters by agreement in July and again in September had failed. No substantive discovery taken place or summary judgment motions been filed. Huntington seeks to intervene to protect its rights relating to Mortgaged Properties. Allowing Huntington to intervene causes no prejudice to any of the parties. Thus, Huntington has acted promptly in seeking to intervene.

### 3. Huntington Has a Substantial Interest in the Mortgaged Properties and Huntington Loans.

In an opinion written by Judge Brandeis, the United States Supreme Court confirmed that the property rights of a creditor holding a mortgage are to be protected under the Fifth Amendment to the Constitution of the United States. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 601-602 (1935). The Sixth Circuit subscribes "to a rather expansive notion of the interest sufficient to invoke intervention as of right." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (*quoting Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)); *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) ("[A] party seeking to intervene need not possess the standing necessary to initiate a lawsuit."); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("This court has acknowledged that 'interest' is to be construed liberally."). The Sixth Circuit does not even require "a specific legal or equitable interest," and resolves close calls in favor of finding an interest that satisfies FRCP 24(a). *Grutter*, 188 F.3d at 399 (*quoting Miller*, 103 F.3d at 1245-47).

Under FRCP 24(a), a claim to a security interest in property represents "an interest in the property 'substantial enough to warrant intervention.'" *See Biodiesel Capital Mgmt. LLC, v. Biodiesel of Mississippi, Inc.*, No. 06-2061BV, 2006 U.S. Dist. LEXIS 11236, at*7-8. Creditors seeking to assert their interests and liens on property that is the subject of a lawsuit, including SEC enforcement actions, have a sufficient legal interest to justify intervention as of right. *See Sec. and Exch. Comm'n v. Flight Transp. Corp.*, 699 F.2d 943, 948 (8th Cir. 1983) (holding that "if the District Court orders FTC's frozen assets 'disgorged' to defrauded investors, Greyhound will be unable to obtain satisfaction of its claim. Greyhound has a sufficiently direct interest to support intervention"); *Federal Deposit Insurance Corp. v. Eagle*, 524 F.2d 1339, 1341 (9th Cir. 1975) (finding "[t]here can be no question that the [judgment creditors] claim an interest in the

property that is the subject of the action."); *In the Matter of the Arbitration Between Holborn Oil Trading Ltd.*, 658 F. Supp. 1205, 1208 (S.D.N.Y. 1987) ("Courts have held that creditors or judgment creditors of a party to an action may intervene to assert a lien on any proceeds or to claim their share of the proceeds of the action."). Thus, under *Radford*, Huntington's substantial interest is not a close call.[7]

### 4. The Case Impairs (Prohibits) Huntington in (from) Protecting Its Substantial Interest as Mortgagee Without Intervention.

Huntington has been impaired in protecting its substantial interest as mortgagee. Huntington, as "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247. In other words, an applicant seeking to intervene, "need not show that substantial impairment of their interest will result," only that it **may** result. *Purnell*, 925 F.2d at 948. (emphasis added). This is a minimal burden. *Miller*, 103 F.3d at 1247; *see also Grutter*, 188 F.3d at 399; *Purnell*, 925 F.2d at 948. Here, the Stay and Receivership unquestionably impair Huntington in protecting its substantial rights as mortgagee.

Again, as a result of *Radford*, this is not a close call, as other courts have recognized. This minimal burden is satisfied when a would be intervenor's ability to collect on a lien may be impaired by a TRO, Preliminary Injunction or Receiver's disposition of assets. *See Flight Transp.*, 699 F.2d at 948 (explaining that impairment exists "because virtually all of FTC's assets are in the hands of the receiver and may be subject to an order of 'disgorgement' or constructive

---

[7] *See Apostolakos v. Panagouleas*, 12th Dist. No. 19187, 2002-Ohio-2166, at ¶ 19 ("A mortgage is a security agreement that conveys a legal interest in real property contingent on the payment of an underlying debt."); *Barnets, Inc. v. Johnson*, 12th Dist. No. CA2004-02-005, 2005-Ohio-682, at ¶ 13 (observing that a mortgage is characterized as a lien); *Credit Based Asset Servicing & Securitization, LLC v. Flagstar Bank, FSB*, No. 273198, 2007 Mich App. LEXIS 825, at *7-8 (a mortgage is a conveyance under Michigan law).

trust by the District Court"); *Biodiesel*, No. 06-2061BV, 2006 U.S. Dist. LEXIS 11236, at *8-9 (holding that sufficient impairment exists when a TRO and subsequent Preliminary Injunction prohibits the would be intervenor "from taking action to execute on the assets," and the appointed receiver may take action on the assets.).

The Sixth Circuit expressly recognizes that the impairment element is even easier to satisfy when the interest is time-sensitive and "dissipates with every passing day." *Miller*, 103 F.3d at 1247 (*citing Americans United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303 (6th Cir. 1990)). Here, with each passing day Huntington's losses increase. Huntington should be permitted to intervene and stabilize the values of the Mortgaged Properties.

The Mortgaged Properties are deteriorating and losing value on a daily basis because Huntington is being prevented from acting. Melchor Affidavit, ¶ 16. Nine of them are coin operated car washes. *Id.* Without daily maintenance, supplies cannot be replenished and they are subject to vandalism and theft. *Id.* Other Mortgaged Properties have tenants and need maintenance. *Id.* Notices to disconnect utilities also have been received. *Id.*, Exhibit H.

> **5.** **The SEC and the Receiver Do Not Adequately Represent Huntington's Interests Because They Represent Interests Directly Adverse to Huntington.**

The only remaining issue is if the SEC and Receiver adequately represent Huntington's interests. The answer is unequivocally no because they represent interests directly adverse to Huntington.

To satisfy the inadequate representation element, Huntington's burden is minimal. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972); *Miller*, 103 F.3d at 1247; *Linton v. Commissioner of Health & Env't.*, 973 F.2d 1311, 1319 (6th Cir. 1992). A proposed intervenor is "not required to show that the representation will in fact be inadequate." *Miller*,

103 F.3d at 1247. In other words, "proposed intervenors need show only that there is a potential for inadequate representation." *Grutter*, 188 F.3d at 399.

Courts consider the following factors to determine if representation is inadequate: "(1) if there is collusion between the representative and an opposing party; (2) if the representative fails in the fulfillment of his duty; and (3) if the representative has an interest adverse to the proposed intervenor." *Purnell*, 925 F.2d at 949-50 (*citing Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227-28 (6th Cir. 1984)). Further, interests need not be completely adverse to be inadequate. *Id.* at 950 (*citing Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990)).

Under these standards, the SEC's interests are adverse to Huntington. "The SEC's primary goal is to protect the public by preventing further securities violations." *Flight Transp.*, 699 F.2d at 948. The SEC's goal of protecting the public and investors as a whole cannot possibly align with Huntington's interest in maximizing Huntington's individual recovery from the Mortgaged Properties; the interests of the public and investors is minimizing Huntington's recovery.

The Receiver's interests are adverse to Huntington for the same reasons. The Court's Order appointing the Receiver charges the Receiver with duty to protect the creditors and victims of the defendants. *See Flight Transp.*, 699 F.2d at 948 ("The receiver is concerned with marshalling and protecting assets for the benefit of all concerned parties."). Huntington did not invest funds with BBC. Thus, Huntington is not among the class of persons protected by the Receivership, and the interest of the persons protected by the receivership is minimizing Huntington's recovery.

Finally, given the practical realities of the situation, the Receiver cannot be expected to devote the time, effort and resources that the Mortgaged Properties require. The value of these

properties is so far below the amount of Huntington's mortgages, only Huntington will receive some payment upon liquidation.  It simply is not practical or prudent for the Receiver to invest in these properties with no hope of any return.  Only Huntington has the financial motivation to attend to the Mortgaged Properties so that Huntington's massive losses will be mitigated.

In summary, without intervention, Huntington's rights to the Mortgaged Properties cannot be protected.  *See Purnell*, F.2d 925 at 950 ("[I]t is well established 'if the interest of the absent party is not represented at all,'" . . . "then she or his is not adequately represented.'").  Huntington seeks and should be permitted to intervene and protect its own rights.

**B.    Huntington Must Be Granted Leave to Permissively Intervene Because Its Claims Share a Common Question of Law and Fact With the Case.**

Even if the Court finds that Huntington may not intervene as of right, the FRCP also allow for the permissive intervention of a party to an action.  FRCP 24(b)(1)(B) provides that:

> On timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact.

Permissive intervention under FRCP 24(b) should be liberally granted so as to promote the convenient and prompt disposition of all claims in one litigation. *Michigan State AFLCIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).  *See also, Morocco v. Nat'l Union Fire & Ins. Co.*, 2003 U.S. Dist. LEXIS 17918 (S.D. Ohio Oct. 9, 2003) *citing, Redlandis Co. v. Chillingsworth Venture Ltd.*, 171 F.R.D. 206, 208 (N.D. Ohio 2001).  The right to intervene under FRCP 24(b) lies within the sound discretion of the trial court. *See Id.*  In exercising its discretion, the Court should consider two factors:  (1) whether the motion to intervene has been timely filed, and (2) whether the claims share "a common question of law or fact" with the main action. *See Id.* Huntington satisfies both of these factors.

As discussed above, Huntington's motion to intervene is timely. The second requirement this Court should consider is whether Huntington's claims share "a common question of law or fact" with those the SEC has already raised in the Case. The relevant inquiry is whether the motion alleges at least one common question of fact or law. *See United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

In *Sec. and Exch. Comm'n v. Kings Real Este Investment Trust*, 222 F.R.D. 660 (D. Kan. 2004), the court granted permissive intervention in an SEC enforcement action to allow an individual to intervene to object to inclusion of his assets in the receiver's assets, and to claim priority over the funds attributed to his investment. The intervenor asserted he invested in one of the relief defendants in a side investment with one of the individual defendants, not the entity alleged to have orchestrated the investor fraud. *Id.* at 662.

The *Kings Real Estate* court determined that the intervenor's claim "raised questions of law and fact in common with the SEC's allegation of fraud." *Id.* at 670. The court also found that a single applicant's motion to intervene "asserting a claim that is closely intertwined with the claims in the main enforcement action would not unduly delay prejudice the SEC's enforcement case. *Id.* at 671 (*citing Sec. and Exch. Comm'n v. Credit Bancorp. Ltd.,* 194 F.R.D. 457, 468-69 (S.D.N.Y. 2000)) (granting motions to intervene permissively by a multitude of defendant's customers because it would not prolong efforts to resolve the SEC's claims and was "the fairest and most efficient method of handling a case with multiple parties and claims.").

Against this back-drop, there is no question that Huntington should be allowed to permissively intervene in the case. The Mortgaged Properties, and Huntington's senior claim to any proceeds related to them, are undeniably entwined with the SEC's enforcement action in this case. Nor will any delay or prejudice will occur. Huntington seeks to intervene for the purpose

of presenting evidence and argument that the Stay be modified to exclude the Mortgaged Properties, and the Receiver abandon control over the Mortgaged Properties.

Huntington's participation in discovery, if any, would be limited to demonstrating that its security interests in the Mortgaged Properties are superior to any interest of defrauded investors, and thus, should not be subject to the Stay or Receivership. *See Kings Real Estate*, 222 F.R.D. at 671 (rejecting the SEC's contention that the intervenor's participation in discovery would cause undue delay or prejudice). The only prejudice that will occur is to Huntington if it is not permitted to undue the improper application of the Stay and Receivership to Huntington and the Mortgaged Properties. Therefore, both considerations for the right to intervene under FRCP 24(b) weigh heavily in favor of allowing Huntington to intervene in this case.

## IV.    CONCLUSION

For all of the reasons stated above, Huntington respectfully requests that its motion to intervene be granted and, upon the execution of the Order the Court, that Huntington be permitted to file with the Court the Answer and Motion to Abandon attached as Exhibits 1 and 2.

Respectfully submitted,

s/Thomas P. Dillon
Thomas P. Dillon (P55191)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
TEL: (419) 241-9000
FAX: (419) 241-6894
tdillon@slk-law.com
Attorneys for The Huntington National Bank

## CERTIFICATE OF SERVICE

I certify that on October 9, 2009, I electronically filed the foregoing **MOTION TO INTERVENE OF THE HUNTINGTON NATIONAL BANK AND MEMORANDUM IN SUPPORT** with the Clerk of Court using the ECF system, which will notify all parties in this case. Parties may access this filing through the ECF system.

s/Thomas P. Dillon
Thomas P. Dillon (P55191)
SHUMAKER, LOOP & KENDRICK, LLP
Attorneys for The Huntington National Bank