# Exhibit C7

20050919-0069635
Pages: 7    Fee: $68.00
09/19/2005 11:52:43 AM
T20050067151
Anita Lopez
Lucas County Recorder MORT

RECORDATION REQUESTED BY:
THE HUNTINGTON NATIONAL BANK
Toledo Commercial Lending
P. O. Box 341470 - NC1W25
Columbus, OH 43234-9909

WHEN RECORDED MAIL TO:
THE HUNTINGTON NATIONAL BANK
NC1W25
P. O. Box 341470
Columbus, OH 43234-9909

_____
FOR RECORDER'S USE ONLY

## OPEN - END MORTGAGE

**MAXIMUM LIEN:** The Maximum Amount of Loan Indebtedness secured by this Open-End Mortgage is $488,250.00. The words "Maximum Amount of Loan Indebtedness" as used in this Mortgage mean the maximum unpaid balance of loan advances made under the Note which may be outstanding at any one time. The Maximum Amount of Loan Indebtedness does not include any (A) interest, (B) taxes, (C) assessments, (D) insurance premiums, or (E) costs incurred for the protection of the Property. Grantor and Lender intend that, in addition to any other indebtedness or obligations secured hereby, this Mortgage shall secure indebtedness arising from loan advances made by Lender after this Mortgage is delivered to the recorder for record.

**THIS MORTGAGE** dated ____9/16/05____ , is made and executed between Phil and Jerry's, LLC , An Ohio Limited Liability Company, whose address is 3796 Rockland Circle, Milbury, OH 43447 (referred to below as "Grantor") and THE HUNTINGTON NATIONAL BANK, whose address is P. O. Box 341470 - NC1W25, Columbus, OH 43234-9909 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, mortgages and conveys to Lender, with mortgage covenants and upon the statutory condition, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Lucas County, State of Ohio:

See "**EXHIBIT A**", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as  626, 622, 616 and 612 N. Reynolds Road, Toledo, OH 43615. The Real Property tax identification number is 20-60164, 20-60167, 20-60171 AND 20-60174

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE. THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF BORROWER'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN BORROWER AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this

**Exhibit 7(b)**

HNB-0002674

MORTGAGE
(Continued)                                                                    Page 2

section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Ohio law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of twenty (20) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if

## MORGAGE
## (Continued)

Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

HNB-0002676

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall pay, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

110358

## LEGAL DESCRIPTION

Real property in the City of Toledo, County of Lucas, State of Ohio, and is described as follows:

Lot numbers 359, 360, 361 and 362 in Westhaven First, a Subdivision in the City of Toledo, Lucas County, Ohio, same being recorded in Plat 32-5. Subject to legal highways.
Parcel Nos. 20-60164, 20-60167, 20-60171 and 20-60174
Addresses: 626 N. Reynolds Rd., 622 N. Reynolds Rd., 616 N. Reynolds Rd. and 612 N. Reynolds Rd.

HNB-0002678

## MORTGAGE
(Continued)

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Ohio without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Ohio.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Phil and Jerry's, LLC and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Phil and Jerry's, LLC .

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means THE HUNTINGTON NATIONAL BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

HNB-0002679

## MORTGAGE
### (Continued)

Page 6

**Note.** The word "Note" means the promissory note dated _9/16/ 05_, in the original principal amount of $488,250.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

PHIL AND JERRY'S, LLC

By: _____
Philip A. Cargnino, Member of Phil and Jerry's, LLC

---

This instrument was prepared by THE HUNTINGTON NATIONAL BANK.

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

KARLA G. JUERGENS
Notary Public, State of Ohio
My Commission Expires 7-6-2008

STATE OF _O H I O_ )
                              ) SS
COUNTY OF _L U C A S_ )

On this _16th_ day of _September_, 20 _05_ before me, the undersigned Notary Public, personally appeared Philip A. Cargnino, Member of Phil and Jerry's, LLC , and known to me to be  of the limited liability company that executed the Mortgage and acknowledged before me the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By _____    Residing at _Toledo OH_

Notary Public in and for the State of _OHIO_     My commission expires _____

---

## SATISFACTION AND DISCHARGE OF MORTGAGE
### (To be used only when obligations have been paid in full)

_____, Ohio _____,

20_____

The conditions and obligations of this Mortgage have been complied with, and therefore this Mortgage is hereby satisfied and discharged.

Attest:                                             THE HUNTINGTON NATIONAL BANK

_____          By: _____

LASER PRO Lending, Ver. 5.26.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - OH  C:\LPWIN\CFI\LPL\G01\FC  TR-63039  PR-COMMUN83

RECORDATION REQUESTED BY:
THE HUNTINGTON NATIONAL BANK
Toledo Commercial Lending
P. O. Box 341470 - NC1W25
Columbus, OH 43234-9909

WHEN RECORDED MAIL TO:
THE HUNTINGTON NATIONAL BANK
NC1W25
P. O. Box 341470
Columbus, OH 43234-9909

```
20060907-0060027
Pages: 2        Fee: $28.00
09/07/2006 10:14:06 AM
T20060073889
Anita Lopez
Lucas County Recorder    MORT
```

SEE ENV.

FOR RECORDER'S USE ONLY

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated _7/18/06_____, is made and executed between Phil and Jerry's, LLC, an Ohio Limited Liability Company, whose address is 3796 Rockland Circle, Milbury, OH 43447 (referred to below as "Grantor") and THE HUNTINGTON NATIONAL BANK, whose address is P. O. Box 341470 - NC1W25, Columbus, OH 43234-9909 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated September 16, 2005 (the "Mortgage") which has been recorded in Lucas County, State of Ohio, as follows:

Recorded on September 19, 2005 in Instrument #20050919- 0069635 in the Office of the Recorder of Lucas County, Ohio.

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in Lucas County, State of Ohio:

Situated in the City of Toledo, County of Lucas, State of Ohio, and is described as follows:

Lot numbers 359, 360, 361 and 362 in Westhaven First, a Subdivision in the City of Toledo, Lucas County, Ohio, same being recorded in Plat 32-5. Subject to legal highways

The Real Property or its address is commonly known as  626, 622, 616 and 612 N. Reynolds Road, Toledo, OH  43615.  The Real Property tax identification number is 20-60164, 20-60167, 20-60171 and 20-60174.

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

Effective as of the date hereof:

1. The first sentence of the section of said Mortgage captioned MAXIMUM LIEN" shall be amended to read as follows:

MAXIMUM LIEN: The Maximum Amount of Loan Indebtedness secured by this Open-End Mortgage is $559,980.48

2. The subsection of said Mortgage captioned "Note," under the section of said Mortgage captioned "DEFINITIONS" shall be amended to read as follows:

The word "Note" means the Promissory Note dated September 16, 2005, in the original principal amount of $488,250.00, from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Promissory Note, and the ISDA (R) Master Agreement ("Master Agreement") dated July 6, 2006 between Grantor and Lender, all Confirmations issued from time to time pursuant to said Master Agreement and all amendments to and modifications of said Master Agreement and/or Confirmations.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED  _7/18/06_____.

GRANTOR:

PHIL AND JERRY'S, LLC

By: _____
Philip A. Cargnino, Member of Phil and Jerry's, LLC

LENDER:

THE HUNTINGTON NATIONAL BANK

X _____
Authorized Signer

HNB-0002721

_____

This instrument was prepared by THE HUNTINGTON NATIONAL BANK.

MODIFICATION OF MORTGAGE
(Continued)

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___OHIO___ )
) SS
COUNTY OF ___LUCAS___ )

On this ___18th___ day of ___JULY___, 20 _06_, before me, the undersigned Notary Public, personally appeared Philip A. Cargnino, Member of Phil and Jerry's, LLC , and known to me to be a member or designated agent of the limited liability company, that executed the Modification of Mortgage and acknowledged before me the Modification to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Modification and in fact executed the Modification on behalf of the limited liability company.

By _____    Residing at ___GRAND RAPIDS___

Notary Public in and for the State of ___OHIO___    My commission expires ___7-11-10___

DIANE M. GARCIA
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES JULY 11, 2010

## LENDER ACKNOWLEDGMENT

STATE OF ___OHIO___ )
) SS
COUNTY OF ___LUCAS___ )

On this ___18th___ day of ___JULY___, 20 _06_, before me, the undersigned Notary Public, personally appeared ___DENNIS KIEL___, and known to me to be the ___VICE PRESIDENT___, authorized agent for the Lender that executed the within and foregoing instrument and acknowledged before me said instrument to be the free and voluntary act and deed of the said Lender, duly authorized by the Lender through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and that the seal affixed is the corporate seal of said Lender.

By _____    Residing at ___GRAND RAPIDS___

Notary Public in and for the State of ___OHIO___    My commission expires ___7-11-10___

DIANE M. GARCIA
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES JULY 11, 2010

LASER PRO Lending, Ver. 5.32.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - OH C:\LPM\CFI\PL\G201.FC TR-36831 PR-22

HNB-0002722

# Exhibit C8

OR 2087 PG 0080

2002 18982        01
SUE KINDER
WOOD COUNTY RECORDER
07/25/2002        11:46        43802
OR        MTG
Real Estate        58.00
Volume 2087 Page    80 -    92

FOR RECORDER'S USE ONLY



## OPEN - END CONSTRUCTION MORTGAGE

**MAXIMUM LIEN: The Maximum Amount of Loan Indebtedness secured by this Open-End Mortgage is $1,147,500.00.** The words "Maximum Amount of Loan Indebtedness" as used in this Mortgage mean the maximum unpaid balance of loan advances made under the Note which may be outstanding at any one time. The Maximum Amount of Loan Indebtedness does not include any (A) interest, (B) taxes, (C) assessments, (D) insurance premiums, or (E) costs incurred for the protection of the Property. Grantor and Lender intend that, in addition to any other indebtedness or obligations secured hereby, this Mortgage shall secure indebtedness arising from loan advances made by Lender after this Mortgage is delivered to the recorder for record.

**THIS MORTGAGE** dated June 7, 2002, is made and executed between ROCKLAND DEVELOPMENT, LTD., AN OHIO LIMITED LIABILITY COMPANY, whose address is 7855 BRINT RD, SYLVANIA, OH  43560 (referred to below as "Grantor") and SKY BANK, whose address is 10 E MAIN STREET, PO BOX 247, SALINEVILLE, OH 43945 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, mortgages and conveys to Lender, with mortgage covenants and upon the statutory condition, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in WOOD County, State of Ohio:

See EXHIBIT "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

**The Real Property or its address is commonly known as** 28310 OREGON RD, PERRYSBURG, OH 43551.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $1,147,500.00.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.   THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH.   ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN,

OR 2087 PG 0081

|  | **MORTGAGE** |  |
|---|---|---|
| **Loan No: 1300304308** | **(Continued)** | **Page 2** |

SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to

## OR 2087 PG 0082

## MORTGAGE
## (Continued)

Loan No: 1300304308                                                      Page 3

post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**CONSTRUCTION LOAN.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any improvements on the Property, the improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Ohio law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain

GR 2 0 8 7 PG 0 0 8 3

**MORTGAGE**
**(Continued)**

Loan No: 1300304308                                                    Page 4

comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to

OR 2087 PG 0084

**MORTGAGE**
**(Continued)**

Loan No: 1300304308                                                    Page 5

discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of

OR 2087 PG 0085

| | **MORTGAGE** | |
|---|---|---|
| Loan No: 1300304308 | **(Continued)** | Page 6 |

its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term,

OR 2087 PG 0086

| | MORTGAGE | |
|---|---|---|
| Loan No: 1300304308 | (Continued) | Page 7 |

obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law.

·OR 2087PG0087

## MORTGAGE
(Continued)

Loan No: 1300304308                                                              Page 8

Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale to be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

OR 2087 PG 0088

| Loan No: 1300304308 | MORTGAGE (Continued) | Page 9 |
|---|---|---|

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of Ohio. This Mortgage has been accepted by Lender in the State of Ohio.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of COLUMBIANA County, State of Ohio.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means ROCKLAND DEVELOPMENT, LTD., and all other persons and entities signing the Note in whatever capacity.

Loan No: 1300304308

**MORTGAGE**
**(Continued)**

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means ROCKLAND DEVELOPMENT, LTD..

**Guarantor.** The word "Guarantor" means any guarantor, surely, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means SKY BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated June 7, 2002, **in the original principal amount of $1,147,500.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

OR 2 0 8 7 PG 0 0 9 0

|                            | **MORTGAGE** |           |
| Loan No: 1300304308        | **(Continued)** | Page 11 |

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

ROCKLAND DEVELOPMENT, LTD.

By: _Philip A Cargnin_
PHILIP A CARGNINO, Member of ROCKLAND DEVELOPMENT, LTD.

By: _Susann A Cargnino_
SUSANN A CARGNINO, Member of ROCKLAND DEVELOPMENT, LTD.

Signed, acknowledged and delivered in the presence of:

X _____
Witness  Dennis J. Kiel

X _Sharon Henry_
Witness  SHARON Hewby

This instrument was prepared by MARY WARNIMONT, SKY BANK, 519 MADISON AVE, TOLEDO, OH 43604.

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Ohio_                )
                               ) SS
COUNTY OF _Lucas_              )

On this _7th_ day of _June_, 20_02_, before me, the undersigned Notary Public, personally appeared PHILIP A CARGNINO, Member; SUSANN A CARGNINO, Member of ROCKLAND DEVELOPMENT, LTD., and known to me to be of the limited liability company that executed the Mortgage and acknowledged before me the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By _Sharon Henry_                    Residing at _519 ) Madison Ave_
                                                 _Toledo, Ohio 43604_
Notary Public in and for the State of _Ohio_     My commission expires _10-7-06_

SHARON HENRY
Notary Public - State of Ohio
My Commission Expires
10-7-06

OR 2087 PG 0091

| Loan No: 1300304308 | MORTGAGE<br>(Continued) | Page 12 |
|---|---|---|

## SATISFACTION AND DISCHARGE OF MORTGAGE

**(To be used only when obligations have been paid in full)**

20_____, Ohio _____,

The conditions and obligations of this Mortgage have been complied with, and therefore this Mortgage is hereby satisfied and discharged.

**Attest:**                                             **SKY BANK**

_____    **By:** _____

LASER PRO Lending, Ver. 5.41.00.07 Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - OH  C:\CFI\HGPR\CFI\LPL\G08.FC  TR-8775  PR-14

EXHIBIT A

Part of the Northwest ¼ of the Northeast ¼ of Section 1, Town 4, United States Reserve in Perrysburg Township, Wood County, Ohio, bounded and described as follows:

Commencing at the Northwest corner of the Northeast ¼ of said Section 1, said point also being the intersection of the centerline of State Route 795 and the centerline of Oregon Road; thence S-00° 47' 22"-W along the West line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 190.02 feet to a point; thence N-89° 59' 22"-E along a line that is 190.00 feet South of and parallel with the North line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 30.00 feet to a point on the East line of Oregon Road, said point being the point of beginning; thence N-44° 59' 22"-E along the Right-of-Way line a distance of 35.36 feet to a point that is 165.00 feet South of and parallel with the North line of the Northwest ¼ of the Northeast ¼ of said Section 1, said point being on the South line of State Route 795; thence N-89° 59' 22"-E along the South line of State Route 795 a distance of 175.35 feet to a point; thence S-00° 47' 22"-W a distance of 400.00 feet to a point; thence S-89° 59' 22"-W a distance of 230.00 feet to a point on the West line of the Northwest ¼ of the Northeast ¼ of said Section 1; thence N-00° 47' 22"-East along the West line of the Northwest ¼ of the Northeast ¼, a distance of 200.00 feet to a point; thence N 89° 59' 22"-E a distance of 30.00 feet to a point on the East line of Oregon Road; thence N-00° 47' 22"-E along the East line of Oregon Road, a distance of 175.00 feet to the point of beginning; containing 1.9671 acres of land, more or less and subject to legal highways and all easements of record.

LESS AND EXCEPT:

Part of the Northwest ¼ of the Northeast ¼ of Section 1, Town 4, United States Reserve in Perrysburg Township, Wood County, Ohio, bounded and described as follows:

Commencing at the Northwest Corner of the Northeast ¼ of said Section 1, said point also being the intersection of the centerline of State Route 795 and the centerline of Oregon Road; thence S-00°-47'-22" W along the West Line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 190.02 feet to a point; thence N-89°-59'-22" E along a line that is 190.00 feet South of and parallel with the North Line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 30.00 feet to a point on the East Line of Oregon Road, said point being the point of BEGINNING; thence N-44°-59'-22"-E along the Right-of-Way Line a distance of 35.36 feet to a point that is 165.00 feet South of and parallel with the North Line of the Northwest ¼ of the Northeast ¼ of said Section 1, said point being on the South line of State Route 795; thence N-89°-59'-22"-E along the South Line of State Route 795 a distance of 175.35 feet to a point; thence S-00°-47'-22"-W a distance of 225.00 feet to a point; thence S-89°-59'-22"-W a distance of 230.00 feet to a point on the West Line of the Northwest ¼ of the Northeast

¼ of said Section 1; thence N-00°-47'-22"-E along the West Line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 25.00 feet to a point; thence N-89°-59'-22"-E a distance of 30.00 feet to a point on the East Line of Oregon Road, thence N-00°-47'-22"-E along the East Line of Oregon Road, a distance of 175.00 feet to the point of BEGINNING; containing 1.0431 acres of land more or less and subject to legal highways and all easements of record.

Listed Address: 28310 Oregon Road

## LOAN EXTENSION AND/OR MODIFICATION AGREEMENT

This **Loan Extension and/or Modification Agreement** (the "Agreement") is made and entered into this _17_ day of December, 2002, by and between **Sky Bank - Mid Am Region,** an Ohio state chartered financial institution, a national banking association, with an office located at 519 Madison Avenue, Toledo, Ohio 43604 (the "Bank"), and Rockland Development LTD. whose principal place of business is located at 7855 Brint Rd. Sylvania, Ohio 43560 (the "Borrower"), and Commercial Guaranty of Philip A. Cargnino and Susann A. Cargnino, whose address is 7855 Brint Rd. Sylvania, Ohio 43560 (the "Guarantors").

### R E C I T A L S:

**WHEREAS,** Bank made Loan No. 1300304308 (the "Loan") to Borrower in the original principal amount of One Million One Hundred Forty Seven Thousand Five Hundred and NO/100 Dollars ($1,147,500.00), as evidenced by a Promissory Note (the "Note"), dated June 7, 2002; and

**WHEREAS,** the Loan is secured by real property located at 28310 Oregon Rd., Perrysburg, Ohio 43551 as evidenced by an Open-End Construction Mortgage (the "Mortgage") dated June 7, 2002 and filed for record July 25, 2002 Wood County Recorders office Vol. 2087 page 80-92 mortgage #01 18982 and an Assignment of Rents dated June 7, 2002 and filed for record July 25, 2002 Wood County Recorders office Vol. 2087 Page 93-100 mortgage #01 18983; and

**WHEREAS,** the Loan is guaranteed by Philip A. Cargnino and Susann A. Cargnino, as evidenced by separate Commercial Continuing Guaranties dated June 7, 2002; and

**WHEREAS,** the current principal balance due and owing on the Loan is Two Hundred Ninety Five Thousand Two Hundred Fifty Two and 75/100 Dollars ($295,252.75); and

**WHEREAS,** the Loan matured/shall mature on December 7, 2022; and

**WHEREAS,** Borrower has requested and Bank has agreed to extend and/or modify the Loan, subject to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing, the receipt and sufficiency of which are hereby acknowledged, the undersigned mutually agree as follows:

1.  **Incorporation of Recitals.** All of the above recitals are incorporated herein by reference.

HNB-0001786

2.    <u>Agreement to extend and/or modify Loan</u>.    Bank hereby agrees to extend and/or modify the Loan as follows:

—    Effective November 27, 2002 the interest rate shall be modified to be at the fixed rate of six and 250/1000 percent (6.25%) per annum until June 7, 2005 ("Conversion Date"). At the Conversion Date, the interest rate shall be a variable rate, equal to three percent (3.00%) per annum over the Index Rate.  Any change in the interest rate resulting from a change in the Index Rate will be effective on June 7, 2005 and every three years thereafter.  The Index Rate shall be the Federal Home Loan Bank Cincinnati 3 year.  New payments begin with the first payment after the interest rate changes.

—    The original Loan Agreement is (further) modified in the following respects: Principal plus interest payments shall be payable in monthly installments in the amount of $8,448.45 commencing January 7, 2003 and continuing on the 7th day of each month thereafter until the Conversion Date. At that time the payment amount shall be recomputed at each Change Date in accordance with the terms set in the Note.  The outstanding balance, principal and interest shall be due and payable on December 7, 2022.

3.    <u>No Effect on Prior Security</u>.    Nothing in this Agreement shall be construed as a release by Bank of any prior security for the Loan.  Borrower, Guarantors and Bank hereby ratify and confirm the previously executed Security Agreement, Guaranty, and all other prior security agreements, mortgages, assignments, pledges, and other security instruments, and all financing statements and liens filed in connection therewith. Each prior security document continues to secure all indebtedness of Borrower to Bank then existing and thereafter arising.

4.    <u>Amendment of Loan</u>.    This Agreement constitutes an amendment of the Loan Documents, does not evidence new indebtedness of Borrower or Guarantor to Bank, and in no way satisfies, cancels or operates as a novation of the Note, Security Agreement or any other document executed on connection with the Loan.  Except as expressly modified by this Agreement, the terms and conditions of the Loan Documents remain in full force and effect, and Bank, Borrower and Guarantor hereby ratify and confirm the terms of the Loan Document, as amended by this Agreement.

HNB-0001787

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be executed as of the date first above written.

Rockland Development, LTD.

Philip A. Cargnino, Member    *Philip Cargnino*

Susann A. Cargnino, Member    *Susann Cargnino*

GUARANTORS:

Philip A. Cargnino    *Philip Cargnino*

Susann A. Cargnino    *Susann Cargnino*

ACCEPTED BY:
SKY BANK - MID AM REGION NKA
SKY BANK, SUCCESSOR BY MERGER

Dennis Risi, Vice President

HNB-0001788

OR 2 4 7 4 PG 0 6 2 5



```
2004 23755          02
SUE KINDER
WOOD COUNTY RECORDER
10/07/2004      10:55    25736
OR    AGMT
Real Estate
HOUSING TRUST FUND          50.00
DOCUMENT TOTAL             50.00
Volume 2474 Page  625 -   100.00
                          634
```

**RECORDING REQUESTED BY,**
**AND WHEN RECORDED MAIL TO:**

Sky Bank
501 – CLO
236 S. Main Street
Findlay, OH 45840

*130030430*

---

### ASSUMPTION AGREEMENT
(28310 Oregon Road, Perrysburg, Ohio)

THIS ASSUMPTION AGREEMENT ("Agreement") is made and entered into effective as of _7-1_, 2004, by and between PHIL AND JERRY'S, LLC ("New Borrower"), an Ohio Limited Liability Company having its principal office at, 3648 Rockland Circle, Millbury, Ohio 43447, ROCKLAND DEVELOPMENT, LTD, an Ohio Limited Liability Company ("Original Borrower"), SUSANN A. CARGNINO ("S. Cargnino"), PHILIP A. CARGNINO ("P. Cargnino") and Jerry Batt ("J. Batt") and SKY BANK, an Ohio bank, with a mailing address at Sky Bank 501- CLO, 236 S. Main Street, Findlay, OH 45840 ("Sky Bank" or "Lender" or "Bank").

WHEREAS, Lender on or about June 7, 2002 granted a mortgage loan to Original Borrower in the amount of $1,147,500.00 (the "Loan"), which Loan is evidenced by a $1,147,500.00 promissory note from Original Borrower payable to Lender dated on or about June 7, 2002, (the "Promissory Note" or the "Note"); and

WHEREAS, the Loan, evidenced by the Promissory Note, is secured, among any other security therefore, in accordance with (i) an Open – End Construction Mortgage from Original Borrower in favor of Lender dated on or about June 7, 2002 and being recorded on July 25, 2002 in Official Records 2087, Page 0081 of the Wood County, Ohio Recorders Office (the "Mortgage"), granting Lender a first priority mortgage lien on property commonly known as 28310 Oregon Road, Perrysburg, Ohio (the "Mortgaged Property"), and (ii) an Assignment of Rents with respect to the Mortgaged Property from Original Borrower in favor of Lender dated June 7, 2002 and being recorded on July 25, 2002 in Official Records 2087, Page 0093 of the Wood County, Ohio Recorders Office (the "Assignment") [the Promissory Note, Mortgage, and Assignment, and all other documents, loan agreements, security agreements, instruments and agreements from Original Borrower evidencing or securing the Loan or executed by Original Borrower in connection with the Loan being sometimes collectively referred to herein as the "Related Documents"]; and

WHEREAS, repayment of the Loan is guaranteed by S. Cargnino and by P. Cargnino in accordance with a Commercial Guaranty from S. Cargnino (the "S. Cargnino Guaranty") and a Commercial Guaranty from P. Cargnino (the "P. Cargnino Guaranty"), each dated on or about June 7, 2002.

HNB-0001810

OR **2474** PG **0626**

WHEREAS, Original Borrower, New Borrower, S. Cargnino, P. Cargnino, and J. Batt have jointly and severally asked Lender to consent to (1) the transfer of the Mortgaged Property from Original Borrower to New Borrower and to the assumption of the Loan by New Borrower, (2) the dissolution of Original Borrower and the release of Original Borrower from all obligations under the Promissory Note, Mortgage and the other Related Documents, (3) the release of S. Cargnino from her obligations to Lender under the S. Cargnino Guaranty and from any other obligations to Lender under the Related Documents, and (4) the substitution of J. Batt for S. Cargnino as a guarantor, and Lender, in accordance with and subject to the terms, conditions and covenants and representations and warranties contained herein, has agreed to said request; and

NOW THEREFORE, by mutual agreement of the parties and in mutual consideration of the premises and for other good and valuable considerations, the receipt and sufficiency of which is hereby mutually acknowledged, New Borrower, Original Borrower, Rockland Development, Ltd. and Lender agree as follows:

1. Lender's Consent.  Lender does hereby consent to the transfer of ownership of the Mortgaged Property from Original Borrower to New Borrower, (which transfer is and will be subject to the lien and operation of the Mortgage and the Assignment), and to the dissolution of Original Borrower.

2.    Assumption of Promissory Note by New Borrower.   New Borrower does hereby unconditionally and absolutely assume and agree to timely and fully pay the Promissory Note, and to be bound by the terms, provisions and covenants thereof, at the time(s), in the manner and in all material respects as therein and herein provided as though New Borrower had been the original maker of the Promissory Note. New Borrower hereby acknowledges receiving a true and complete copy of the Promissory Note.

3.  Assumption of Mortgage and Assignment by New Borrower. New Borrower does hereby unconditionally and absolutely agree to assume and to timely and fully pay, observe and perform all of the obligations, covenants and indemnities of the grantor under the Mortgage and the Assignment at the time(s), in the manner and in all material respects as therein and herein provided as though New Borrower had originally executed and delivered the Mortgage and Assignment as the grantor thereof.

4.    Assumption of all other Related Documents (if any). New Borrower does hereby unconditionally and absolutely agree to assume and to timely and fully pay, observe and perform all of the obligations, covenants and indemnities of all other Related Documents, in the manner and in all material respects as therein and herein provided as though New Borrower had originally executed said other Related Documents as the maker thereof.

5. Release of Original Borrower and S. Cargnino.  Subject to the term, provision, covenants and representations and warranties of this Agreement, Lender does hereby (i) release Original Borrower from all obligations to Lender under the Promissory Note, Mortgage, Assignment or other Related Documents, and (ii) release S. Cargnino from the S. Cargnino Guaranty, and from any other liability or obligations to Lender under the Related Documents; provided, however, Lender, expressly reserves its rights against Original Borrower and S. Cargnino for any other indebtedness of Original Borrower and/or S. Cargnino to Lender that may now or hereafter exist out of any other transaction between and one or more of said parties and the Lender.

6. Deliveries and Requirements. The agreements of Lender herein shall become effective when, and only when, Lender has received a counterpart of this Agreement duly executed by New Borrower, Original Borrower, S. Cargnino, P. Cargnino, and J. Batt, and each of the following conditions have been fully satisfied:

HNB-0001811

OR 2474 PG 0627

(a) Delivery to Lender of a Borrowing Resolution and organizational documents from New Borrower evidencing that New Borrower is duly formed and in good standing in the State of Ohio and that the transactions contemplated hereby have been duly authorized by all required action(s) on the part of New Borrower;

(b) Payment to Lender of all fees and expenses related to this transaction, including without limitation, recording fees and a loan assumption fee in the amount of $500.00;

(c) Evidence, satisfactory to Lender of the transfer of fee simple title to the Mortgaged Property from Original Borrower to New Borrower;

(d) Execution and delivery to Lender of a Commercial Guaranty from J. Batt, prepared by and being in form and content acceptable to Lender (the "J. Batt Guaranty"); and

(d) Delivery to Lender of any other instrument or agreement reasonably requested by Lender.

7. Absolute Assumption. New Borrower does hereby represent and warrant and covenant unto Lender that the assumption of the Loan, the Mortgage, the Assignment and all other Related Documents by New Borrower is absolute and unconditional.

8. Notices. Any notice or demand that is made under any Related Documents to New Borrower or Original Borrower shall hereafter be made to the address set forth below or such other address that may hereafter be provided to Lender:

> Phil and Jerry's, LLC
> 3648 Rockland Circle
> Millbury, Ohio 43447

9. Miscellaneous Terms and Conditions.   (a) If any provision of this Agreement conflicts with applicable law in any specific situation, such provision shall be modified to the minimum extent necessary to make its application to such situation valid and enforceable. Such conflict shall not affect any other provision hereof which can be given effect with the conflicting provision as modified or, if the conflicting provision cannot be modified, without the conflicting provision. The captions and headings contained herein are for convenience only, and shall not be used to interpret, limit or define the scope or intent of any provision hereof.

(b)    Original Borrower and New Borrower hereby jointly and severally represent and warrant to Lender that (i) there are no present uncured defaults under the Promissory Note or any other Related Document or any events or conditions which but for the giving of notice and/or passage of time would constitute a default there-under, and (ii) as of the date hereof neither the Original Borrower nor the New Borrower has/have any defenses, claims, counterclaims or rights of offset or recoupment with respect to the Promissory Note or any of the Related Documents or with respect to the Loan indebtedness evidenced and/or secured thereby.

(c)    New Borrower hereby authorizes any attorney at law to appear in any court of record in the State of Ohio, or any other State or Territory of the United States, after the Promissory Note becomes due, and waive the issuance and service of process, enter appearance and confess a judgment against New Borrower in favor of the holder of the Promissory Note, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all rights of

HNB-0001812

OR 2474 PG 0628

appeal and stay of execution. New Borrower hereby expressly (a) waives a conflict of interest in an attorney retained by Lender confessing judgment against New Borrower upon the Promissory Note, and (b) consents to the attorney retained by Lender in receiving a legal fee from Lender for legal services rendered for confessing judgment against New Borrower upon the Promissory Note. A copy of the Promissory Note, certified by the Lender, may be filed in each such proceeding in place of filing the original as a warrant of attorney.

(d)       The undersigned P. Cargnino does hereby agree to the terms, conditions and covenants of the foregoing Assumption Agreement and does hereby ratify and confirm the P. Cargnino Guaranty, and P. Cargnino does hereby continue to authorize, and J. Batt does hereby authorize, any attorney at law to appear in any court of record in the State of Ohio, or any other State or Territory of the United States, after any sums guaranteed under the P. Cargnino Guaranty and the J. Batt Guaranty, respectively, become due, and waive the issuance and service of process, enter appearance and confess a judgment against the P. Cargnino and J. Batt in favor of the holder of the P. Cargnino Guaranty and the J. Batt Guaranty, respectively, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all rights of appeal and stay of execution. P. Cargnino and J. Batt hereby each expressly (a) waive a conflict of interest in an attorney retained by Lender confessing judgment against P. Cargnino upon the P. Cargnino Guaranty and the J. Batt Guaranty, respectively, and (b) consent to the attorney retained by Lender in receiving a legal fee from Lender for legal services rendered for confessing judgment against P. Cargnino and J. Batt upon the P. Cargnino Guaranty and J. Batt Guaranty, respectively. A copy of the P. Cargnino Guaranty and the J. Batt Guaranty, certified by the Lender, may be filed in each such proceeding in place of filing the original as a warrant of attorney.

<u>Balance of Page Left Blank Intentionally.</u>

HNB-0001813

OR 2474 PG 0629

IN WITNESS WHEREOF, this Agreement has been executed effective as of the date first appearing above.

Lender:

Sky Bank

By _____
Robert Ruhlin
Its:  Title: _____

Original Borrower and S. Cargnino:

Rockland Development, Ltd.

By: _____          And By: _____
Philip Cargnino                              Susann Cargnino
Its:  Member                                 Its: Member

_____
Susann Cargnino, personally

New Borrower & P. Cargnino and J. Batt:

> **"WARNING-BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."**

Phil and Jerry's, LLC
An Ohio Limited Liability Company

By: _____          And By: _____
Philip Cargnino, Its Member                  Jerry Batt, Its Member

(Signatures Continued on Next Page)

HNB-0001814

OR 2474 PG 0630

(Continuation of Signature Page)

> "WARNING-BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."

Philip Cargnino, personally                    Jerry Batt, personally

H:\jsheppard\assump\rockland to phil & jerrys\assumption agreement

HNB-0001815

OR 2474 PG 0631

<u>ACKNOWLEDGMENT</u>

STATE OF OHIO           )
                        ) SS.
COUNTY OF *Lucas*       )

On this _1st_ day of _July_, 2004 before me, a Notary Public in and for said County and State, personally appeared **PHILIP CARGNINO** the individual who executed the foregoing instrument, personally, and in his capacities as **MEMBER of ROCKLAND DEVELOPMENT, LTD.**, and as **MEMBER of PHIL AND JERRY'S, LLC**, and acknowledged that he did sign the foregoing instrument, personally, and in his Member capacities and that such signing is his free act and deed, personally, and, in such Member capacities, the free act and deed of each of said Companies.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

(SEAL)                                    _Susan A. Madden_
                                          Notary Public



My commission expires:

My Commission Expires 12-17-06
Notary Public, State of Ohio
SUSAN A. MADDEN

<u>ACKNOWLEDGMENT</u>

STATE OF OHIO           )
                        ) SS.
COUNTY OF *Lucas*       )

On this _1st_ day of _July_, 2004 before me, a Notary Public in and for said County and State, personally appeared **SUSANN CARGNINO**, the individual who executed the foregoing instrument, personally, and in her capacity as **MEMBER of ROCKLAND DEVELOPMENT, LTD.**, and acknowledged that she did sign the foregoing instrument, personally, and in her capacity as such Member, and that such signing is her free act and deed, personally, and, as such Member the free act and deed of said Company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Susan A. Madden_
Notary Public

SUSAN A. MADDEN
Notary Public, State of Ohio
My Commission Expires 12-17-06

My commission expires:

HNB-0001816

OR 2 4 7 4 PG 0 6 3 2

### ACKNOWLEDGMENT

STATE OF OHIO                    )
                                )  SS.
COUNTY OF _____               )

    On this _____ day of _____, 2004 before me, a Notary Public in and for said County and State, personally appeared **JERRY BATT**, the individual who executed the foregoing instrument, personally, and in his capacity as **MEMBER of PHIL AND JERRY'S, LLC**, and acknowledged that he did sign the foregoing instrument, personally, and in his capacity as such Member, and that such signing is his free act and deed, personally, and, as such Member the free act and deed of said Company.

    IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
                    Notary Public

**SUSAN A. MADDEN**
Notary Public, State of Ohio
My Commission Expires 12-17-06

    My commission expires:

HNB-0001817

OR 2474 PG 0633

## ACKNOWLEDGMENT

STATE OF OHIO                    )
                                 ) SS.
COUNTY OF _Oucar_                )

   On this _1st_ day of ___July___, 2004 before me, a Notary Public in and for said County and State, personally appeared **Robert Ruhlin**, the individual named in the foregoing instrument as the _Vice Presidents_ of **SKY BANK**, and acknowledged that he did sign the foregoing instrument and that such signing is his free act and deed and the free act and deed of said Bank.

   IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

(SEAL)

                                 _Susan G. Madden_
                                      Notary Public

SUSAN A. MADDEN
Notary Public, State of Ohio
My Commission Expires 12-17-06

My commission expires:

This Instrument Prepared By:
Sky Bank
501 – CLO
236 S. Main Street
Findlay, OH 45840

H:\jsheppard\assump\roan to G & K\assumption agreement

HNB-0001818

OR 2474 PG 0634

"EXHIBIT-A"

Part of the Northwest ¼ of the Northeast ¼ of Section 1, Town 4, United States Reserve in Perrysburg Township, Wood County, Ohio, bounded and described as follows:

Commencing at the Northwest corner of the Northeast ¼ of said Section 1, said point also being the intersection of the centerline of State Route 795 and the centerline of Oregon Road; thence S-00° 47'22"-W along the West line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 190.02 feet to a point; thence N-89° 59' 22"-E along a line that is 190.00 feet South of and parallel with the North line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 30.00 feet to a point on the East line of Oregon Road, said point being the point of beginning; thence N-44° 59' 22"-E along the Right-of-Way line a distance of 35.36 feet to a point that is 165.00 feet South of and parallel with the North line of the Northwest ¼ of the Northeast ¼ of said Section 1, said point being on the South line of State Route 795; thence N-89° 59' 22'-E along the South line of State Route 795 a distance of 175.35 feet to a point; thence S-00° 47' 22"-W a distance of 400.00 feet to a point; thence S-89° 59' 22"-W a distance of 230.00 feet to a point on the West line of the Northwest ¼ of the Northeast ¼ of said Section 1; thence N-00° 47' 22"-East along the West line of the Northwest ¼ of the Northeast ¼, a distance of 200.00 feet to point; thence N 89° 59' 22"-W a distance of 30.00 feet to a point on the East line of Oregon Road; thence N-00° 47' 22" -E along the East line of Oregon Road, a distance of 175.00 feet to the point of beginning; containing 1.9671 acres of land, more or less and subject to legal highways and all easements of record.

LESS AND EXCEPT:

Part of the Northwest ¼ of the Northeast ¼ of Section 1, Town 4, United States Reserve in Perrysburg Township, Wood County, Ohio, bounded and described as follows:

Commencing at the Northwest corner of said the Northeast ¼ of Section 1, said point also being the intersection of the centerline of State Route 795 and the centerline of Oregon Road; thence S-00°-47'-22" W along the West Line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 190.02 feet to a point; thence N-89°-59'-22" E along a line that is 190.00 feet South of and parallel with the North Line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 30.00 feet to a point on the East Line of Oregon Road, said point being the point of BEGINNING; thence N-44°-59'-22"-E along the Right-of-Way Line a distance of 35.36 feet to a point that is 165.00 feet South of and parallel with the North Line of the Northwest ¼ of the Northeast ¼ of said Section 1, said point being on the South Line of State Route 795; thence N-89°-59'-22-E along the South Line of State Route 795 a distance of 175.35 feet to a point; thence S-00°-47'-22"-W a distance of 225.00 feet to a point: thence S-89°-59'-22"-W a distance of 230.00 feet to a point on the West Line of the Northwest ¼ of the Northeast ¼ of said Section 1; thence N-00°-47'22"-E along the West Line of the Northwest ¼ of the Northeast ¼ of said Section 1, a distance of 25.00 feet to a point; thence N-89°-59'-22"-E a distance of 30.00 feet to a point on the East Line of Oregon Road, thence N-00°-47'-22"-E along the East Line of Oregon Road, a distance of 175.00 feet to the point of BEGINNING; containing 1.0431 acres of land more or less and subject to legal highways and all easements of record.

HNB-0001819

*04-2325S*

*OB*  *9H*



## *Office of the Wood County Recorder*

1 Courthouse Square
Bowling Green, Ohio 43402

**SUE KINDER,** *Recorder*

Telephone 419-354-9140

Date_____*10/7/04*_____

WITH REFERENCE TO THE ATTACHED:

_____There appears to be a discrepancy between the
mortgagors shown on this document and the
mortgagors shown on our records.

_____There appears to be a discrepancy between the
mortgagees shown on this document and the
mortgagees shown on our records.

____*X*_____There appears to be a discrepancy between the
volume and page shown on this document and the
volume and page shown on our records. *2087/81*

_____There appears to be a discrepancy between the
legal description shown on this document and
the legal description shown on our records.

_____There appears to be a discrepancy between the
signing bank and the original mortgagee OR the
last assignee.

_____Other

HNB-0001820



## Sue Kinder
### WOOD COUNTY RECORDER

10/19/04
_____
Date

**MAIL:**

**Enclosed are the following documents:**

23755

HNB-0001821

ONE COURTHOUSE SQUARE • BOWLING GREEN, OH 43402–2473

(419) 354-9140 LOCAL TO BOWLING GREEN
(419) 243-4223 EXTENSION 9140 NORTHERN WOOD COUNTY

For Toll–Free Calling From Following Areas Dial Number Listed

| | | |
|---|---|---|
| Grand Rapids . . . . . . . . . . . . . . . . . .832-1541 | North Baltimore/Bloomdale . . . .257-3259 | |
| Hoytville/Deshler. . . . . . . . . . . . .278-3797 | Perrysburg/Toledo . . . . . . . . .243-4223 | |
| Luckey/Stony Ridge/Woodville . . . . 833-5211 | Risingsun/Fostoria . . . . . . . . . . .457-4545 | |

# Exhibit C10

RCPT# 37901. STN 1
$47.80 H.MTGE

STATE OF MICHIGAN
MONROE COUNTY
RECEIVED FOR RECORD

17 SEP 2003  10:04:45 AM
OFFICIAL SEAL
GERI ALLEN
REGISTER OF DEEDS

LIBER 2581    PAGE 503

# MORTGAGE

WHEN RECORDED MAIL TO:
SKY BANK
501-CLO
236 S MAIN STREET
FINDLAY, OH  45840

FOR RECORDER'S USE ONLY



THIS MORTGAGE dated September 12, 2003, is made and executed between PHIL AND JERRY'S, LLC, AN OHIO LIMITED LIABILITY COMPANY, whose address is 3796 ROCKLAND CIR, MILLBURY, OH  43447 (referred to below as "Grantor") and SKY BANK, whose address is 10 E MAIN STREET, PO BOX 247, SALINEVILLE, OH  43945 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor mortgages and warrants to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all rights to make divisions of the land that are exempt from the platting requirements of the Michigan Land Division Act, as it shall be amended; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in MONROE County, State of Michigan:

See EXHIBIT "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as  14293 S CUSTER RD, DUNDEE, MI  46131.

CROSS-COLLATERALIZATION.  In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

FUTURE ADVANCES.  Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $532,800.00.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS

HNB-0001257

MORTGAGE
Loan No: 1300367415    HNB-0001256    (Continued)    Page 2

===

AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL COVENANTS AND OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS AND COVENANTS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor and Lender agree that Grantor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

    **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

    **Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

    **Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

    **Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times (a) attend to Lender's interests, (b) inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage, (c) appraise the property, (d) investigate whether the property is a site or source of environmental contamination, or (e) remove to remediate any environmental contamination. Without limiting the foregoing, Lender shall have the right to conduct and submit to appropriate governmental agencies a "baseline environmental assessment" of the property within the meaning of section 20101 of the Michigan Natural Resources and Environmental Protection Act, MCL section 324.20101, as it shall be amended from time to time. If, at the time of the appraisal, investigation, assessment, removal, or remediation, there shall have occurred and be continuing an Event of Default, then all costs and expenses of the appraisal, investigation, assessment, removal or remediation, shall be subject to the "Expenditures by Lender" section of this Mortgage. Grantor shall execute any consultant contract, waste manifest, notice, and other documents that Lender requests to enable Lender to take or conduct any action or activity contemplated by this paragraph, if Grantor is given a reasonable opportunity to negotiate the terms of the contract, manifest, notice, or other document.

    **Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy



LIBER 2581 PAGE 504

## LEGAL DESCRIPTION

The land in this description is situated in the Village of Dundee, County of Monroe, State of Michigan and further described as follows:

All that part of the Northeast quarter of Section 19, Town 6 South, Range 7 East, further described as: Commencing at the center of said Section 19; thence North 00 degrees 03 minutes 01 seconds West, measured (North 00 degrees 00 minutes 00 seconds East, recorded), a distance of 1831.48 feet, to the point of beginning; thence continuing North 00 degrees 03 minutes 01 seconds West, a distance of 226.85 feet, to a point in the centerline of Highway M-50; thence South 80 degrees 10 minutes 00 seconds East, on the said centerline, a distance of 181.40 feet, to a point; thence South 06 degrees 20 minutes 30 seconds West, a distance of 209.09 feet, to a point; thence South 80 degrees 10 minutes 00 seconds East, a distance of 33.38 feet, to a point; thence South 00 degrees 00 minutes 00 seconds East, a distance of 15.00 feet; thence North 80 degrees 10 minutes 00 seconds West, a distance of 191.14 feet, to the point of beginning.

LIBER 2581    PAGE 505

**MORTGAGE**
(Continued)

of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. Grantor's "interest" in the Real Property shall be considered to include, without limitation, any right to make a division of the Real Property that is exempt from the requirement of the Michigan Land Division Act, as it shall be amended. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Michigan law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special

HNB-0001261

**MORTGAGE**
Loan No: 1300367415                              **(Continued)**                              Page 4

flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Upon Grantor's receipt of any tax statements for the property, Grantor shall forward such tax statements to Lender. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own

**MORTGAGE**
**(Continued)**

choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:                                                    HNB-0001262

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or

HNB-0001263

**MORTGAGE**

Loan No: 1300367415                    (Continued)                    Page 6

desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien. Such failure to make payment for taxes or insurance shall constitute waste at the time such items are due and payable.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter,

## MORTGAGE

Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code. Without limiting those rights and remedies, Lender may, at its option, either (a) enforce its security interest in the Personal Property under the Uniform Commercial Code or other applicable law or (b) include the Personal Property in any judicial or non-judicial foreclosure of this Mortgage.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Any failure of Grantor to pay any taxes assessed against the Property or to pay any installment of those taxes or to pay any insurance premium upon any policy covering any property located upon the Property shall constitute waste and shall entitle Lender to the appointment by a court of competent jurisdiction of a receiver of the Property for the purpose of preventing the waste, except that no receiver may be appointed for any dwelling house or farm occupied by any owner of it as the owner's home or farm or for any store or other business property having an assessed valuation of $7,500 or less. Subject to the order of the court, the receiver may collect the rents and income from the Property and shall exercise control over the Property to the extent ordered by the court. A court may also appoint a receiver for the Property in any other circumstances permitted by law. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender may sell, release and convey the Real Property at public sale and sign and deliver to the purchasers at the sale good and sufficient deeds of conveyance, paying any surplus funds, after payment in full of the sums then due under this Mortgage and the expenses of the sale, including attorney fees as provided by law, to Grantor, all in accordance with applicable law.

**Warning. This Mortgage contains a power of sale, and, upon default, may be foreclosed by advertisement. In foreclosure by advertisement, no hearing is involved and the only notice required is to publish notice in a local newspaper and to post a copy of the notice on the Property.**

**Waiver.** If this Mortgage is foreclosed by advertisement, Grantor hereby voluntarily and knowingly waives all rights under the Constitution and laws of the State of Michigan and Constitution and laws of the United States to all notice and a hearing in connection with the above-mentioned foreclosure by advertisement, except as set forth in the Michigan statute providing for foreclosure by advertisement.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Will.** If Grantor remains in possession of the Property after Lender or the purchaser at a foreclosure sale of the Property become lawfully entitled to possession of the Property, the Grantor shall become a tenant at will of Lender or the purchaser of the Property and shall, at the option of the person lawfully entitled to possession, either (1) pay a reasonable rental for the use of the Property or (2) vacate the Property immediately upon the demand of the person lawfully entitled to possession.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.                                                    HNB-0001264

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales and Grantor waives Grantor's rights under MCLA Section 600.3224 to have separate parcels sold separately and to have no more parcels than necessary sold. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal



HNB-0001265

**MORTGAGE**

Loan No: 1300367415                            (Continued)                            Page 8

Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness. After the date that payment of the Indebtedness secured by this Mortgage has been accelerated by Lender, acceptance by Lender of any amount(s) paid by or on behalf of Grantor which is less than the full unpaid balance of the Indebtedness, including without limitation all accrued interest, late charges and other amounts due Lender under this Mortgage, shall not be deemed a waiver of default or acceleration, but shall be credited toward the unpaid balance of the Indebtedness, unless Lender shall specifically agree in writing to waive any such default or acceleration or both.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover its reasonable attorneys' fees. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of Ohio, except and only to the extent of procedural matters related to the perfection and enforcement of Lender's rights and remedies against the Property, which matters shall be governed by the laws of the State of Michigan. However, in the event that the enforceability or validity of any provision of this Mortgage is challenged or questioned, such provision shall be governed by whichever applicable state or federal law would uphold or would enforce such challenged or questioned provision. The loan transaction which is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Ohio.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of COLUMBIANA County, State of Ohio.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand

strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Use of Pronouns.** Any term used to designate any of the parties in this Mortgage shall be deemed to include the respective heirs, estate representatives, successors, and assigns of the parties, and all pronouns and relative words used in this Mortgage are intended to apply in the singular, plural, feminine or neuter forms as the context may require, to appropriately refer to the parties designated.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Michigan as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means PHIL AND JERRY'S, LLC and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means PHIL AND JERRY'S, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the

HNB-0001266



HNB-0001267

**MORTGAGE**
**(Continued)**

Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means SKY BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated September 12, 2003, **in the original principal amount of $532,800.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR COVENANTS AND AGREES TO THE PROVISIONS OF THIS MORTGAGE.

GRANTOR:

PHIL AND JERRY'S, LLC

By: _____
     PHILIP A GARGNINO, Member of PHIL AND JERRY'S, LLC

This Mortgage was prepared by: SKY BANK - CECELIA DeBOLT
                               236 SOUTH MAIN ST
                               FINDLAY, OH 45840

LIBER 2581   PAGE 513

Loan No: 1300367415

**MORTGAGE**
**(Continued)**

Page 11

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___OHIO___                              )
                                                 ) SS
COUNTY OF ___LUCAS___                            )

On this ___12th___ day of ___September___, 20 03, before me, the undersigned Notary Public, personally appeared **PHILIP A CARGNINO, Member of PHIL AND JERRY'S, LLC,** and known to me to be a member or designated agent of the limited liability company that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By ___Karla B Juergens___          Residing at ___Toledo OH___

Notary Public in and for the State of ___OHIO___     My commission expires_____

KARLA G. JUERGENS
Notary Public, State of Ohio
My Commission Expires 7-8-2008

LASER PRO Lending, Ver. 5.22.10.003  Copr. Harland Financial Solutions, Inc. 1997, 2003.  All Rights Reserved.  - MI

LIBER 2581  PAGE 514