UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

                        Plaintiff,

v.

JOHN J. BRAVATA, RICHARD J.
TRABULSY, ANTONIO M. BRAVATA,
BBC EQUITIES, LLC, BRAVATA
FINANCIAL GROUP, LLC, and SHARI A.
BRAVATA,

                        Defendants.

Case No. 09-12950
Hon. David M. Lawson

_____/

**RECEIVER'S FIRST INTERIM STATUS REPORT AND ACCOUNTING
FOR BBC EQUITIES, LLC AND BRAVATA FINANCIAL GROUP, LLC**

    As required by this Court's Order Appointing Receiver dated September 2, 2009 (the

"Receivership Order"), Earle I. Erman, the Receiver in these proceedings ("Receiver") files

his First Interim Status Report and Accounting for BBC Equities, LLC and Bravata

Financial Group, LLC stating as follows:

    **A.**      **A Summary of the Operations of the Receiver.**[1]

          1.      The Receiver was appointed on September 2, 2009.  Upon his

appointment, the Receiver engaged the services of Bodman LLP as his attorney for specific

matters (subject to conflict clearance) and the services of O'Keefe & Associates as financial

advisors and accountants.  Bodman LLP has a conflict of interest in representing the

Receiver in connection with matters relating to Comerica Bank and Huntington Bank. The

Receiver and his law firm have been acting as counsel in connection with those matters.

---

[1] The categories herein are those specifically provided for in the Receivership Order.

2.      On September 4, 2009, the Receiver met with representatives of the 3000 and 4000 Town Center Building in Southfield, Michigan, where Defendants BBC Equities, LLC ("BBC") and Bravata Financial Group, LLC ("Bravata") (collectively, the "Receivership Entities"), conducted their primary business operations.  Arrangements were made to change the locks and take possession of the Southfield, Michigan premises.  Both offices as well as all other business locations of the Receivership Entities had ceased operations prior to the Receiver's appointment.  The Receiver was advised that this occurred on or about July 27, 2009, the date this Court entered its Order Granting in Part Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Other Relief, Temporary Restraining Order, Freezing Assets, and Scheduling Hearing.  Both offices are fully furnished and, at the 3000 Town Center Office, there is a computer network and other office equipment.

3.      Under the Order Appointing Receiver, bank accounts were established by the Receiver at Fidelity Bank in the form required by the Receivership Order.

4.      The Receiver provided notice to all of the prior financial institutions of the Receivership Entities with appropriate wire transfer instructions to turnover any funds on hand.  The bank accounts of the Receivership Entities contained little or no cash.  To date, only Genoa Bank of Ohio and Fifth Third Bank have turned funds over to the Receiver, in the amounts of $4,900 and $1181, respectively.  Comerica Bank has filed a disclosure statement with the Court setting forth various accounts and account balances, but asserts that it has a security interest in those funds due to certain loans extended to the Receivership Entities.  Likewise, Huntington Bank asserts security interests in any funds held in accounts of the Receivership Entities maintained with Huntington.  Other banks that

2

have provided responses have disclosed that the accounts of the Receivership Entities have either been closed or have a zero balance.  A schedule of the Bank's notices and responses is attached as Exhibit A.

5.      The Receiver has taken possession of the Receivership Entities computer systems and electronic data, obtained necessary passwords and secured all necessary company records.

6.      A significant portion of the Receiver's work thus far has been to identify the real estate holdings of the Receivership Entities to determine the extent to which any of the real estate investments of the Receivership Entities have any realizable value for the receivership estate and its creditors and investors.  As a general observation, the potential recoverable funds to the receivership estate in connection with the possible sale of such properties appears to be de minimis when analyzed against what appears to be at least $48 million in combined trade and investor debt (excluding potential bank deficiency claims and landlord claims) and the costs attendant to the administration of this estate.

7.      With the assistance of the SEC, together with a review of the books and records of the Receivership Entities and interviews with former employees, the Receiver has identified 39 properties in which the Receivership Entities or their affiliated entities hold an interest or held an interest prior to the Receiver's appointment.

8.      The prior business operations of the Receivership Entities were conducted under numerous controlled LLCs.  The following is a list of the entities the Receiver has identified as potentially related entities:

BBC Holdings 1, LLC[2]
BBC Holdings 4, LLC

_____

[2] f/k/a Bravata Holdings 1, LLC

3

Ferndale Lofts, LLC[3]
BBC Holdings 6, LLC[4]
BBC Holdings 7, LLC[5]
BBC Holdings 8, LLC
BBC Holdings 9, LLC[6]
BBC Equities, LLC[7]
BBC Holdings 11, LLC
BBC Holdings 12, LLC
BBC Holdings 13, LLC
BBC Holdings 14, LLC
BBC Holdings 15, LLC
BBC Holdings 16, LLC
BBC Holdings 17, LLC
BBC Holdings 18, LLC
BBC Holdings 19, LLC
BBC Holdings 20, LLC
BBC Holdings 21, LLC
BBC Holdings 22, LLC
BBC Holdings 23, LLC
BBC Holdings 24, LLC
BBC Holdings 25, LLC
BBC Holdings 26, LLC
BBC Holdings 27, LLC
BBC Holdings 28, LLC
BBC Holdings 29, LLC
BBC Holdings 30, LLC
BBC Holdings 31, LLC
BBC Holdings 32, LLC
BBC Holdings 33, LLC
BBC Holdings 34, LLC
BBC Holdings 35, LLC
BBC Holdings 36, LLC
BBC Holdings 37, LLC
BBC Holdings 38, LLC
BBC Holdings 39, LLC
BBC Holdings 40, LLC
BBC Holdings 41, LLC
BBC Holdings 42, LLC
BBC Holdings 43, LLC
BBC Holdings 44, LLC

---

[3] f/k/a Bravata Holdings V, LLC
[4] f/k/a Bravata Holdings VI, LLC
[5] f/k/a Bravata Holdings VII, LLC
[6] f/k/a Bravata Holdings IX, LLC
[7] f/k/a Bravata Holdings X, LLC

BBC Holdings 45, LLC
BBC Holdings 46, LLC
BBC Holdings 47, LLC
BBC Holdings 48, LLC
BBC Holdings 49, LLC
Hastings Property 1 LLC
1760 Alexis – Toledo, LLC
Villa at Palisades, LLC[8]
Renaissance Adrian, LLC
3618 Rockland Circle, LLC
3630 Rockland Circle, LLC
Rockland Maple City, LLC
Rocket Square Dorr Street Investors, LLC
Rockland Lemoyne, LLC
Rockland – Moline, LLC
1465 Towers – Oregon, LLC
1493 Custer – Dundee, LLC
2254 Enterprise – Fremont, LLC
28310 Oregon – Perrysburg, LLC
345 Anthony Wayne – Waterville, LLC
4117 Alexis – Toledo, LLC
4824 Lewis – Toledo, LLC
6616 Providence – Whitehouse, LLC[9]
6016 Summit – Toledo, LLC
620 Reynolds – Toledo, LLC
GBC-BBC SS, LLC
GBC-BBC-HP, LLC
Phoenix Venture Capital, LLC
BBC Capital, LLC
BBC Management, Inc.
RJR Construction Management, Inc.
Strategic Institutional Consulting Group, LLC

        9.     In many instances, instead of acquiring fee title to properties, the real

estate interest was acquired through the transfer of an LLC interest, in which the fee owned

real estate was subject to an underlying existing mortgage. Thus many of the property

acquisitions were undertaken without the need to obtain new financing and in some cases,

without obtaining the required consent of the underlying lender. In some circumstances, the

---

[8] f/k/a BBC Holdings 50, LLC
[9] f/k/a 5616 Providence – Whitehouse, LLC

consideration for the acquisition of the property was the transfer of stock or certificates in BBC.

10.     Under 28 USC § 754, the Complaint and Receivership Order were registered in the Federal District Court where real property interests were thought to exist – the Western District of Michigan, the Northern District of Ohio, the Middle District of Florida, and the District of South Carolina.

11.     The Receiver undertook the process of diverting the Receivership Entities' mail to his offices by speaking with and formally notifying the Postmasters for the Cities of Southfield, Michigan; Perrysburg, Ohio; Cincinnati, Ohio; and Florence, Kentucky, cities where the Receivership Entities had offices.

12.     Prior to the cessation of operations the Receivership Entities had conducted business at:

   A. 3000 Town Center, Suite 1700, Southfield, Michigan (BBC);

   B. 4000 Town Center, Suite 1000, Southfield, Michigan (Bravata Financial Group);

   C. 3235 Levis Commons Boulevard, Perrysburg, OH (Bravata Financial Group);

   D. 3240 Levis Commons Boulevard, Perrsyburg, OH (BBC Equities); [C & D shall be referred to collectively as "Levis Commons Offices"]

   E. 950 Trade Centre Way, Suite 305, Portage, MI (Bravata Financial Group);

   F. 1511 Calvary Drive, Suite 101, Florence, KY 41042 (Bravata Financial Group);

   G. 10300 Alliance Road, Suite 125, Cincinnati, OH 45242 (Bravata Financial Group).

Under applicable state law, the Landlords for the Levis Commons and Alliance Road offices in Ohio and the offices located in Florence, Kentucky have re-taken possession and have changed the locks due to the Receivership Entities' previous abandonment of the same. The Portage, Michigan offices have been abandoned, the furniture located there has been repossessed by the company that sold it to the Receivership Entities, and the Landlord has changed the locks.

13.    The Receiver conducted an interview of Joseph Bravata (the brother of Defendant John Bravata) at the 3000 Town Center premises on September 9, together with David Eisenberg, an attorney with the Receiver's office; Sue Koss of O'Keefe & Associates, the Receiver's financial advisors; and Shane Ringle who works with O'Keefe & Associates, as a corporate consultant and information technology expert. Mr. Bravata showed the Receiver where various investor files were located and pointed out which offices belonged to which employees of the Receivership Entities. Mr. Bravata also provided access to the computer at his work station. Unfortunately, Mr. Bravata's computer had only limited access to the BBC computer system and he stated that he did not know how to access any other files. Joseph Bravata described his role with the company as primarily involved in taking applications from investors relating to the raising of new funds and processing those applications. Mr. Bravata also provided information regarding Pensco Trust Company and Equity Trust Company, the entities which acted as a conduit for BBC investments. Investors who wished to invest their 401k funds in the Receivership Entities would transfer such funds to either Pensco Trust Company or Equity Trust Company, who in turn would transfer the funds to the Receivership Entities.

14.    Joseph Bravata provided access to the office in which investor files were located.  The office contained an empty file cabinet marked "Phoenix Venture Capital."  When the Receiver questioned him as to what that was, Mr. Bravata stated that it was a company that had nothing to do with the Receivership Entities and that its files had been moved.  The Receiver reviewed the corporate filings with the Michigan Department of Labor and Economic Growth which show that Phoenix Venture Capital, LLC ("Phoenix") was organized on June 22, 2009, and that its original registered address was the same address as BBC Equities, LLC.  Further, Phoenix was organized by Paul K. Villarruel, an attorney employed by BBC Equities, LLC., and the address of the organizer was "BBC Capital, LLC, Attn: Legal Department, 3000 Town Center Drive, Suite 1700, Southfield, MI 48075."  In addition, Rodney E. Fry, a former employee of the Receivership Entities is the resident agent of Phoenix and the balance sheet of Bravata Financial Group reflects an investment in Phoenix in the amount of $194,545.71.  Finally, the resident address was changed from the Town Center address to 8680 W. Grand River, Brighton, MI 48116, a property owned by the Receivership Entities.  Based upon all of the circumstances, the Receiver believes that Phoenix Venture Capital should be included within the scope of the Receivership Entities.

15.    Based on the information contained in the Phoenix corporate filings The Receiver also reviewed the corporate filings of BBC Capital, LLC ("BBC Capital").  BBC Capital was organized on June 1, 2009, and has as its registered address the 3000 Town Center office location utilized by BBC Equities.  John Sellers, former in-house general counsel for the Receivership Entities, is the registered agent of the company, and Richard Trabulsy is listed as Manager and organizer of BBC Capital.  Based upon all of the

circumstances, the Receiver believes that BBC Capital, LLC should be included within the scope of the Receivership Estates.

16.    There is also a filing with the Michigan Department of Labor and Economic Growth reflecting that Strategic Institutional Consulting Group, LLC is a domestic limited liability company.  John A. Sellers, formerly in-house counsel for the Receivership Entities, is reflected as the resident agent, with a registered office of 3000 Town Center, Suite 1700, Southfield, Michigan, the former premises of BBC Equities, LLC. The entity was incorporated on December 16, 2008 and operated under assumed names "Strategic ICG and BFG Institutional Consulting Group".  Melissa Traver advised the Receiver that this entity was owned by BFG Holdings.  In addition, there is a receivable reflected on the books and records of BBC Equities, LLC in the amount of $320,000 from Strategic Institutional Consulting Group.  Based on all of the circumstances, the Receiver believes that Strategic Institutional Consulting Group, LLC should be included within the scope of the Receivership Estates.

17.    On September 10 the Receiver met with Defendant John Bravata at the 3000 Town Center offices location.  Mr. Bravata provided the names of some of the various officers and employees of the company as well as information regarding the structure of the Receivership Entities.  Unfortunately, Mr. Bravata was only able to provide limited information regarding the real property interests of the Receivership Entities, and no information regarding valuations of such properties, loan information or tenant and rental information.  He was, however, of the opinion that the liquidation of the receivership assets would not likely yield any funds to the Receivership Estate after payment of administrative expenses.  Mr. Bravata also explained the corporate structure of the various entities.  He also

stated that the enterprise was dependent on its continued receipt of cash from investors to operate.

18.    Mr. Bravata also stated that RJR Construction Management, Inc. ("RJR Construction"), a company formed by R. J. Trabulsy, John Sellers and himself, was the property manager for the real property interests owned by the Receivership Entities. RJR Construction operated out of the same Levis Commons Offices occupied by BBC. Based upon all of the circumstances, the Receiver believes that RJR Construction should be included within the scope of the Receivership Estates.

19.    Mr. Bravata further stated that Donna Stapleton, former employee of BBC and/or RJR had knowledge of the real property interests owned by the Receivership Entities, as well as tenant and rent roll information.  Mr. Bravata advised that he would provide Ms. Stapleton's contact information after he spoke with her and would advise her to cooperate with the Receiver.  Despite repeated requests, Mr. Bravata never provided such contact information claiming that Ms. Stapleton had not authorized him to do so. |

20.    In regard to ownership information and loan and valuation information relating to the various properties, Mr. Bravata stated that Melissa Traver, former Chief Financial Officer of BBC, would be able to provide relevant information.   The Receiver contacted and met with Ms. Traver at the 3000 Town Center offices on September 14, 2009.  Ms. Traver provided access to the computer located in her office which contained information regarding the various properties owned by the Receivership Entities, including estimated valuations and loan balance information.  Ms. Traver also directed the Receiver to the physical files containing such information.

21.    Ms. Traver also provided information regarding BBC Management, Inc., which was the payroll company for the Receivership Entities, owned by John Bravata and Richard Trabulsy.  A review of the corporate filings of BBC Management, Inc. reveals that its resident agent is Richard Trabulsy, and its registered office is the 3000 Town Center office location.  Based upon all of the circumstances, the Receiver believes that BBC Management, Inc. should be included within the scope of the Receivership Estates.

22.    After obtaining Donna Stapleton's contact information from counsel for the landlord of the Levis Commons Offices, the Receiver was able to make arrangements to interview her.  Ms. Stapleton agreed to meet with the Receiver's representatives at the Levis Commons Offices in Ohio and provided access to her computer and to the physical files.  The computer and files contained information regarding the aforementioned real property interests, as well as tenant, rent and operational costs of each, as well as some loan and appraisal information.  Ms. Stapleton's computer, along with a number of boxes of physical files were removed from the premises by the Receiver.

23.    The Receiver engaged R. J. Montgomery & Associates, Inc. ("R.J. Montgomery") as appraiser and possible auctioneers of the personal property of the Receivership Entities.  A representative of R. J. Montgomery visited both Town Center, Southfield, Michigan office locations as well as both Levis Commons, Perrysburg, Ohio office locations and has inventoried and appraised the office furniture and equipment at each location.  A copy of the appraisal is attached as Exhibit B.  A Uniform Commercial Code ("UCC") search in the State of Michigan indicates that there is an "all asset" UCC-1 Financing Statement recorded on May 6, 2005 against the personal property of BBC Holdings, L.L.C. by Fifth Third Bank.  The Receiver has investigated this lien and has

11

determined that it has no relationship to the Receivership Entities and does not cover the assets of the Receivership Entities. The Michigan UCC search also revealed a potential purchase money security interest filed by Balco Interiors, LLC d/b/a/ Interior Environments ("Balco") against some of the assets of BBC Equities, LLC based upon a UCC-1 Financing Statement recorded on June 30, 2009. The Receiver is communicating with representatives of Balco to determine the validity and extent of its lien in order to assist the Receiver in determining the proper course of action with respect to the disposition of the assets identified in the appraisal.

24. The Landlord for the Portage, Michigan offices has indicated that no furniture or office equipment remains at that location as the same had been repossessed by the seller. The Landlord for the Alliance Road offices in Ohio has indicated that no furniture or office equipment is located at those premises because the office had not yet been completed. The Landlord for the Florence, Kentucky offices has taken possession of the furniture and office equipment located at those premises and has indicated they are of de minimis value, but in any event asserts a landlord lien due to non-payment of rent. The Landlord has agreed not to dispose of the furniture and office equipment until further notice from the Receiver. The Receiver is investigating the validity of the Landlord's purported lien and the value of the property.

25. The Receiver has been in discussions with representatives of Huntington National Bank, Comerica Bank, Old Fort Bank, Citizens Credit Union and other financial institutions regarding their secured claims in the real estate interests of the Receivership Entities. It is clear from these discussions, as well from loan and court documents provided by these financial institutions that the Receivership Entities were in dire

financial condition prior to the SEC beginning its action on July 26, 2009. For instance, 14 of the 39 Receivership properties were subject to mortgages relating to loans provided by Huntington Bank. After default, Huntington Bank commenced legal action in Ohio and obtained judgments with regard to each loan. Judgments were entered on July 17, 2009, August 3, 2009, and August 13, 2009 in amounts totaling $9,059,578.79. Further, Huntington Bank stated in its Motion to Intervene (the "Huntington Motion") [Docket no. 91], that BBC Equities had informed it in the Fall of 2008 that BBC Equities did not have sufficient cash flow to pay the relevant loans for each property and that the value of the properties was less than the unpaid balances of the loans (See Exhibit 3 to the Huntington Motion, Affidavit of Felix Melchor [Docket No. 91-5]). The Melchor Affidavit further states that Huntington Bank was of the belief at this time that BBC Equities was not able to pay debts as they became due and that BBC Equities' liabilities exceeded its assets. In addition to Huntington Bank, First Federal Bank, Metamora State Bank, TCF National Bank, Croghan Colonial Bank, and Citizens Bank were granted mortgages on Receivership properties and each of these institutions began foreclosure proceedings, and/or obtained judgment in May, July, and August of 2009. The date of default on all of the aforementioned loans could only have occurred well in advance of the date the SEC filed suit.

26.    The Receiver has responded to numerous phone calls and e-mail communications from various creditors and individual investors of the Receivership Entities.

27.    The Receiver has interviewed individuals with information relating to assets owned by John Bravata individually and their whereabouts.

28.    The Receiver has participated individually and through his counsel in various court matters including, the contempt proceedings pending before this Court and matters relating to the identification of property of defendant John Bravata, including a 1995 Ferrari that is the subject of this court's asset freeze, compliance with this court's orders following the Bravata contempt proceedings and matters relating to a certain storage facility containing personal property of John and Joseph Bravata.  A great deal of legal and administrative time has been spent on these matters.  The Receiver believes that the funds ordered turned over to the Receiver ($32,745.68) were ordered as a contempt sanction and are now property of the Receivership Estate.

29.    The Receiver has participated, individually, and through his counsel in matters relating to the administrative proceedings pending before the State of Michigan Offices of Financial and Insurance Regulation.

30.    The Receiver has reviewed information concerning an existing $1 million Errors and Omissions Insurance policy and potential claims the Receiver may have under that policy and has communicated with counsel and reviewed litigation papers relating to third party claims pending under that policy.

**B.**    **The Amount of Cash on Hand, the Amount and Nature of Accrued Administrative Expenses, and the Amount of Unencumbered Funds in the Estate.**

1.    The total amount of cash on hand as of the date of this report is $42,415.84, held as follows:

- Receivership Account, Estate of BBC Equities - $41,491.60.

- Receivership Account, Estate of Bravata Financial Group –    $1,019.16.

14

2.      Administrative expenses in the nature of professional fees and costs of the Receiver and his counsel, financial advisors and appraiser have accrued in the following appropriate amounts:

Earle I. Erman, Receiver                          $106,011.49 as of 10/15/09

Bodman, LLP, Counsel for Receiver            $60,923.30 as of 10/15/09

O'Keefe & Associates, Financial Advisors   $102,707.00 as of 10/11/09

**C.      <u>A Schedule of All the Receiver's Receipts and Disbursements (Attached as an Exhibit of the Interim Status Report).</u>**

A schedule of the Receiver's Receipts and Disbursements is attached as Exhibit C.

**D.      <u>A Description of all Known Receivership Property, Including Approximate or Actual Valuations, Anticipated or Proposed Dispositions, and Reasons for Retaining Assets Where No Disposition is Intended.</u>**

1.      A significant portion of the Receiver's time and resources have been spent analyzing the real estate interests of the Receivership Entities.  To that end, a comprehensive chart has been developed, attached as Exhibit D, reflecting all known real estate interests of the Receivership Entities together with the Receiver recommendations regarding same.  In summary, it reflects that the vast majority of the real estate interests owned by the Receivership Entities are encumbered beyond their current or realistically realizable value and represent no value to the Receivership Entities.  Of the 39 property interests the Receiver believes that the majority of them should be immediately abandoned to the respective secured creditors upon terms and conditions acceptable to the Receiver. The remaining properties bear further investigation, including, as appropriate, the ordering

of informational title searches and possible sale, which the Receiver is undertaking. Consistent with the court's order, the chart reflects valuation information, the proposed disposition and, as appropriate, the reason to retain certain properties.

2.      The Receiver is also in possession of office furniture and equipment with an appraised forced liquidation value of $81,015.00 and a fair market value of $144,967.00, as outlined in paragraph A-23 of this report and the R. J. Montgomery Appraisal attached hereto as Exhibit B. The Receiver expects to sell this property in bulk or at public auction and is in the process of evaluating those options although, taking into consideration the circumstances, expects to receive offers of less than forced liquidation value. The Receiver intends to file a motion with the court in connection with this sale.

3.      The Receiver has received an accounting and schedule of the funds held at Comerica Bank together with documentation concerning its secured claims in various funds on hand at Comerica Bank. Under the lending relationship between the Receivership Entities and Comerica Bank, Comerica Bank has a valid right of set off and/or rights as a secured creditor in connection with two certificates of deposit. In one instance the bank is owed $301,641.98 and holds a certificate of deposit in the amount of $302,805.15. The bank also holds a certificate of deposit in the amount of $113,499.26 to secure a letter of credit issued by the bank relating to lease defaults with an Ohio landlord, which leases are in default. The Receiver proposes to authorize Comerica Bank to exercise its right of set off in connection with the outstanding loan and resolve the balance of its claims upon further investigation in connection with the Ohio landlord. The Receiver is not able to assess, at this time, if these efforts will yield any funds for the Receivership Estates.

**E.**     **A Description of Liquidated and Unliquidated Claims Held by the Receivership Entities, including the Need for Forensic or other Investigatory Resources; Approximate Valuations of Claims; and Anticipated or Proposed Methods of Enforcing such Claims (including Likelihood of Success in: (i) Reducing the Claims to Judgment; and (ii) Collecting such Judgments).**

1.     Hilton Road Claim.  There is a potential claim against Defendant John Bravata in connection with corporate funds used to acquire and or commence construction of a personal residence at 8485 Hilton Road, Brighton, Michigan.  Forensic assistance will be required to assist the Receiver and counsel in developing this claim.  The amount of the claim is $973,002.  The books and records of the Receivership Entities reflect amounts due BBC from John Bravata of $1,569,000 as a loan receivable, however invoices (which are included in that figure) in the amount of $596,000 from vendors that performed work on the residence remain unpaid.  Therefore, the potential net claim against John Bravata is $973,002 pending further investigation as shown in Schedule E-1.  The Receiver will object to any claims (at a later date) filed by alleged creditors who performed work for or provided services to Mr. Bravata individually.  The claim would be pursued by way of an action against Mr. Bravata by the Receiver, prosecuted by the SEC or the Receiver's counsel.  The Receiver believes that this claim can be reduced to judgment.  Collectability of Mr. Bravata is unknown at this time.

2.     Ponzi Scheme Claims.  Under applicable law, the Receiver, in his discretion, may, if a Ponzi scheme is established, recover funds from the investors who received total cash back, in excess of the amount invested ("Net Winners") and may also seek to recover general redemptions made to investors, under state fraudulent transfer laws.  Attached as Exhibit E-2 is a schedule showing the amounts which might be pursued against

various individual investors. Due to the relatively short duration of the operation of the Receivership Entities, no significant amounts were received by the Net Winners. A total of $75,017 was received by 15 investors. As to the general redemptions, of total funds invested in the amount of $51,108,890 there were total redemptions of $6,574,374. These claims, if determined to be valid and practical, would be pursued by the Receiver, with the assistance of the SEC or Receiver's counsel and financial consultants. The claims could be reduced to judgment and could have varying degrees of collectability based upon the financial condition of the particular individual investor.

       3.   <u>Finders Fees</u>. There exist potential claims against individuals that received commissions or finder's fees for selling Class C and D shares in BBC Equities to investors. Forensic assistance will be required to assist the Receiver and counsel in developing these claims. The books and records reflect finder's fees related to Class C and D shares in the amount of $2,246,874 of which $386,521 and $216,045 relate to claims against Defendants John Bravata and Richard J. Trabulsy, respectively. The total potential claims are $2,246,874 shown in Schedule E-3. These claims require further investigation.

       4.   <u>Credit Card Usage</u>. There are potential claims against Defendants John Bravata, Richard J. Trabulsy and Shari Bravata for recovery of personal charges on American Express credit cards. The books and records reflect American Express Expense Reports which acknowledge personal charges on the credit cards of $220,627, $291,266, and $25,721 for John Bravata, Richard J. Trabulsy and Shari Bravata, respectively. According to discussions with Melissa Traver, former CFO of BBC Equities, the statements were reviewed every month end and amounts identified as personal expenses were recorded as a loan payable from either John Bravata or Richard J. Trabulsy. She also stated that instead of

paying back the personal charges in cash to BBC Equities, the Defendants would forgo a paycheck. The total potential claim for the American Express credit card personal charges is $537,614 as shown in Schedule E-4. Certain American Express Reports were not located and further review will be required to assist the Receiver and counsel in developing these claims.

       5.    <u>John Bravata and Richard J. Trabulsy Loans Receivable.</u> There are potential claims against Defendants John Bravata and Richard J. Trabulsy for personal loans payable to BBC Equities. The books and records reflect loans receivable in the amounts of $543,620 and $503,363 from John Bravata and Richard J. Trabulsy, respectively. The loans reflect personal charges, including the American Express personal charges discussed in Section E-4 of this report, and also items such as car insurance, house payments and utilities. The total amount of this potential claim is $1,046,983 as shown in Schedule E-5. The claims would be pursued by way of an action against Mr. Bravata and Mr. Trabulsy by the Receiver, prosecuted by the SEC or the Receiver's counsel. The collectibilty of Mr. Bravata and Mr. Trabulsy is unknown at this time.

       6.    <u>Pensco and Equity Trust Company</u>. These entities acted as conduits for receipt of substantial funds by BBC that were previously held by Investors in their IRA accounts and other accounts. Further investigation is required to determine if there are any potential claims against these entities.

       7.    <u>General Claims for Exorbitant Management Fees to Related Entities</u>. Potential claims exist for exorbitant management fees and engagement fees paid to related parties of BBC Equities. Management fees were paid to BBC Management, Inc. in the amounts of $3,896,425 during calendar year 2008 and $1,787,292 during the period of

January 2009 through June 2009 based upon review of the books and records of BBC Equities. The total amount paid to BBC Management, Inc. for management fees, which included the wages, salaries, benefits, and selling and administrative expenses of BBC Equities, was approximately $5.7 million during the January 2008 through June 2009 time period. Management fees were excessive and represented nearly three times, or 256% of operating revenues. By industry standards, most property management companies incur fees in the range of 5% of operating revenue. Furthermore, salaries paid to the two Defendants, John Bravata and Richard J. Trabulsy, represented over 50% of the total management fees incurred by BBC Equities. BBC Equities also incurred management fees paid to related entity, RJR Construction, in the amount of $348,000, and engagement fees in the amount of $5,142,857 paid to Bravata Financial Group from January 2008 through June 2009. Furthermore, BBC Equities holds a receivable to related entity, Strategic Institutional Consulting Group, in the amount of $320,000. Further review and investigation is required to assist the Receiver and counsel in developing these claims.

8.    Other Claims. The Receiver believes that it would also be entitled to pursue alter ego and piercing of the corporate veil claims for the individual defendants' misuse of the corporate form, and negligence claims against individual officers, directors and/or members.

F.    **A List of all Known Creditors with their Addresses and the Amounts of their Claims.**

1.    Trade and Other Creditor Claims. Attached as Exhibit F-1 are schedules reflecting the amounts and names of known trade and other, non-investor creditors of BBC and Bravata. The total indebtedness relating to these claims is $3,018,267.04. The

receiver would expect the claims in this category to increase based upon unknown contingent lender, landlord, employee and other claims. The Receiver continues to update this list as he is contacted by creditors and their counsel.

        2.    <u>Investor Claims</u>. There are a total of 455 investors with outstanding claims totaling $44,534,516. These are comprised of various classes of investor claims based upon certificates issued by BBC with various interest rates and terms. A schedule of the investors and the respective amounts of their claims is attached as Exhibit F-2.

**G.**    **<u>The Status of Creditor Claims Proceedings, after such Proceedings have been Commenced</u>.**

        1.    No creditor claims proceedings have been instituted, nor is the Receiver prepared to recommend a distribution scheme to creditors at this time. Upon the recovery of funds which make it practical and appropriate to make a distribution to creditors, the Receiver will formulate a claims filing and reconciliation procedure. In the interim, the Receiver has sent a notification to known creditors and investors advising them of the current status of the matter, including the continuation of the creditor stay.

**H.**    **<u>The Receiver's Recommendations for a Continuation or Discontinuation of the Receivership and the Reasons for the Recommendations</u>.**

        1.    The Receiver recommends continuation of the receivership. Absent the receivership there will be no organized mechanism to deal with the orderly liquidation of the remaining assets of the businesses. Termination of the receivership would, subject to other orders of the court, place the remaining assets in the hands of the former principals of the company with or without authority to act, depending on how the court addresses the other provisions of the Receivership Order. The Receiver believes, based upon all of the

circumstances, that the Receiver needs to remain in place to wind down and liquidate the remaining assets and pursue clams against third parties.

2.     The Receiver recommends expansion of the receivership to include all of the entities listed in Paragraph A-8.  It is clear that the Receivership Entities operated through the use of numerous related entities.  This list includes Phoenix Venture Capital, LLC, BBC Capital, LLC, Strategic Institutional Consulting Group, LLC, RJR Construction Management, Inc. and BBC Management, Inc. for the reasons set forth in Paragraphs A-14, A-15, A-16, A-18 and A-21.  In order to grant full relief, these other entities and their assets should be included in the Receiver Estate.

3.     In order to preserve the value of any remaining assets and causes of action, the Receiver recommends a continuation of the asset freeze and preliminary injunction and other protective provisions of the Receivership Order.  Absent continuation of these protections, creditors and investors would be free to pursue claims separately against the remaining assets, causing a race to the assets and potential preferential treatment by the most aggressive creditors.  The injunctive provisions and asset freeze need to go hand in hand with the continuation of the Receivership.

4.     Full rights of discovery and the ability to institute actions against third parties should be granted to the Receiver.  This is necessary in order for the Receiver to carry out his duties, including the full investigation of claims and the institution of appropriate actions.  To the extent necessary, this authorization should be accorded to the SEC as well.

5.     The Receiver should be authorized to sell any and all assets of the various entities including real estate interests.  The provisions of 28 USC §§ 2001 and 2004

requiring multiple appraisals should be waived by the Court to allow for a more streamlined sale process.

        6.     The Receiver is concerned and feels it is appropriate to comment on the costs of administration of this estate at this time.  In the very short time period between his appointment and the filing of this report, the Receiver and his counsel and financial advisors have accrued substantial professional fees in the proper administration of the estate. At this stage of the proceedings it is clear that these fees will likely continue to be disproportionate to any near term recovery in this case.  In order to minimize expenses of administration, the Receiver believes that the resources of the SEC should therefore be utilized to pursue third party claims with assistance of the Receiver and Receiver's counsel and financial consultants. In addition, the Receiver will consider pursuit of these claims on a contingent fee basis.

        WHEREFORE, the Receiver requests that the recommendations contained herein be adopted by the Court and that an appropriate order enter.

ERMAN, TEICHER, MILLER,
ZUCKER & FREEDMAN, P.C.

By:   /s/ Earle I. Erman
     Earle I. Erman (P24296)
     Receiver of BBC Equities, LLC
     and Bravata Financial Group, LLC
     400 Galleria Officentre, Ste. 444
     Southfield, MI  48034
     Tel:   (248) 827-4100
     Fax:   (248) 827-4106
     eerman@ermanteicher.com

DATED:     October 19, 2009

F:\OTHERINS\BBC\first interim status report.doc